UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-CV-80416-KLR

CORDELL CONSULTANT, INC. MONEY
PURCHASE PLAN AND TRUST, a
Virginia Corporation,

    Plaintiff,

v.

ELIOT C. ABBOTT, et al.

    Defendants.

_____/

**DEFENDANTS' MOTION TO EXCLUDE TESTIMONY
OF PLAINTIFF'S PROPOSED EXPERT CULVER SMITH**

Defendants Steve Silverman and Abbey Kaplan move pursuant to Fed. R. Evid. 702 for an order excluding the proposed expert testimony of D. Culver Smith, III for failing to meet the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny and for Plaintiff's failure to comply with Fed. R. Civ. P. 26.

Plaintiff has brought two intentional tort claims against the Defendants: aiding and abetting a fraud and conspiracy to commit a fraud in connection with an April 20, 2007 loan. Both require proof of knowledge of the fraud and assistance in its accomplishment. However, Plaintiff proposes to offer an expert to opine that defendants should have known of Okun's Ponzi scheme against the QI customers and should have withdrawn from any representation of the client, apparently as of December 2006.[1] That proposed testimony ignores the requirements for actual knowledge and substantial assistance to the April 2007 loan, relying instead on a "should

---

[1] As set forth below, the expert also fails to address the requirement that the firm was only required to withdraw if they knew that the client used their services to commit a crime or fraud and refused to disclose and rectify it.

_____
KENNY NACHWALTER, P.A.

have known" and "should have done" standard – i.e., negligence. Therefore, the proposed testimony does not fit the legal standard for liability in the case and is not helpful to the trier of fact. To the contrary, it is likely to be confusing and prejudicial.

Plaintiff's expert also did not undertake adequate study to make his analysis reliable. Furthermore, Plaintiff's expert has made no effort to differentiate the individual defendants' knowledge and activity, even though they cannot be collectively liable without proof of individual intentional agreement, knowledge and participation. The opinions are therefore not helpful to the trier of fact and instead are likely to lead to confusion about the basis on which Defendants may be held liable.

Finally, the disclosure of Mr. Smith's proposed testimony was inadequate and Plaintiff failed to rectify the inadequacies in the six month period from the time Cordell's counsel recognized them and the final deadline for expert reports. Therefore, Mr. Smith's proposed testimony must be excluded.

## Memorandum

On October 17, 2014, Plaintiff submitted a document containing what it asserted was the Rule 26 compliant disclosure relating to its proposed expert witness, D. Culver Smith III. D.E. 228, filed herewith as Exhibit 1. Mr. Smith's deposition was taken on October 24, 2014. Filed herewith as Exhibit 2. On November 4, 2014, Plaintiff's counsel indicated that he would be sending revised disclosures and supplements. Thereafter, new expert disclosure deadlines were established, and Plaintiff had until April 24, 2015 to provide revisions or new reports. D.E. 294, 408. On April 24, 2015, Plaintiff submitted the identical disclosures for Mr. Smith's proposed expert testimony. D.E. 421-2 (Attached as Exhibit 1 for ease of reference). Despite Mr. Smith's testimony on October 27, 2014 that:

**It would be helpful if I knew more[2]**

Plaintiff did not take the opportunity during the intervening six months to provide Mr. Smith with more data or to ask him to provide a more complete written and signed report. Defendants are hard pressed to disagree with Mr. Smith. It certainly would be helpful if he knew more before he was proffered for deposition or "his" opinions were presented.

---

[2] Deposition of D. Culver Smith III, October 27, 2014 at 35. The Smith disclosures and the Smith transcript are being filed simultaneously with this motion as Exhibits 1 and 2 respectively. The five documents on which he relied are attached as Exhibit 3.

*Standards for Liability*

The Eleventh Circuit has clearly described the nature and elements of the claim Cordell has brought against all of the Defendants, thus establishing what Cordell must prove to recover:

Plaintiff claims that the [Defendant law firm and its lawyers] "aided and abetted their client's scheme to induce plaintiff to make a $7 million loan based on misrepresentations. The elements of this claim under Florida law are as follows: (1) the existence of an underlying fraud; (2) the defendants' knowledge of the fraud; and (3) the defendants' provision of substantial assistance to advance the commission of the fraud. *ZP No. 54 Ltd. P'ship v. Fid. & Dep. Co. of Md.*, 917 So. 2d 368, 372 (Fla. Dist. Ct. App. 2005)." *Cordell Consultant Inc. v. Abbott*, Case No. 13-10143 (11th Cir. 2014).

Plaintiff also claims that the Defendant lawyers conspired to help their client defraud it in connection with the loan. "The elements of the claim under Florida law are as follows: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy. *Raimi v. Furlong,* 702 So. 2d 1273, 1284 (Fla. Dist. Ct. App. 1997)." *Id.*

*Standards for Expert Testimony*

Federal Rule of Evidence 702, which controls the admission of expert testimony, provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

As the Supreme Court made clear in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and its progeny, Rule 702 requires district courts to serve an important gate-keeping function concerning the admissibility of expert

evidence. District courts must engage in a three-part inquiry in determining the admissibility of expert testimony under Rule 702, considering whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address;
>
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and
>
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Holt*, 777 F.3d 1234, 1265 (11th Cir. 2015), *cert. denied sub nom. Barbary v. United States*, No. 14-9919, 2015 WL 2449043 (U.S. June 29, 2015); *City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562 (11th Cir.1998);   The party offering the expert bears the burden of laying the proper foundation for the admission of expert testimony and must prove the admissibility by a preponderance of the evidence. *Allison v. McGhan Med. Corp.,* 184 F.3d 1300, 1306 (11th Cir.1999).

### *The Proposed Expert Opinion*

Plaintiff's disclosures indicate that

> Skip Smith will opine on the obligation that Defendants [KPKB, Kaplan, Abbott and Silverman] had to withdraw as counsel for and discontinue and cease their representation of Ed Okun . . . including their representation in the underlying loan transactions with Plaintiff.  Specifically he will opine that Defendants should have refused to continue representing Ed Okun . . . they knew or should have known that their representation would assist Okun in conduct that was criminal or fraudulent or would result in or facilitate criminal or fraudulent conduct.

Ex. 1 at 2.

### Rule 702(b):  Lack of Adequate Factual Basis

Smith based his opinion on two Rules of Professional Conduct:

**Rule 4-1.16 Declining Or Terminating Representation**

**(a) When Lawyer Must Decline or Terminate Representation.** Except as stated in subdivision (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the Rules of Professional Conduct or law;

. .

(4) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent, unless the client agrees to disclose and rectify the crime or fraud; or

(5) the client has used the lawyer's services to perpetrate a crime or fraud, unless the client agrees to disclose and rectify the crime or fraud.

Mr. Smith did not identify any facts on which he relied to demonstrate that the client a) persisted in a course of conduct b) involving Silverman or Kaplan's services that c) the Kaplan or Silverman reasonably believed was criminal or fraudulent to meet the conditions of subpart (4). Nor did he identify any facts to demonstrate that the client used KPKB's or Silverman or Kaplan's services to commit a crime or fraud to meet the condition of subpart (5). He also failed to address subpart (1) as to each of them.

All the conduct that Mr. Smith disclosed that he was aware of and relied on in forming his opinion occurred *before* Okun engaged KPKB. He has disclosed no facts or data on which he relied to establish or assume that Okun's wrongdoing with respect to the 1031 QI companies in any way involved Kaplan or Silverman's services, between the time Okun engaged KPKB and the time Okun borrowed the $7 million from Cordell. Even more importantly, since we are concerned with the individual liability of Mr. Kaplan and Mr. Silverman, Mr. Smith is unable to identify any conduct by Okun that involved Silverman or Kaplan's individual services, was fraudulent or criminal, and related to the $7 million loan. Thus, Plaintiff and its expert have disclosed no factual basis on which to rest his opinion as to these two Defendants.

Mr. Smith also relied on **Rule 4-1.2 Objectives And Scope Of Representation**

**(d) Criminal or Fraudulent Conduct.** A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows or reasonably should know is criminal or fraudulent. However, a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning, or application of the law.

Again, Mr. Smith failed to identify any factual basis to support a conclusion that either Kaplan or Silverman actually counseled or assisted Okun in any conduct that they knew or should have known was criminal or fraudulent. No basis has been provided in the disclosures or records to demonstrate that they counseled or assisted him to take money from the QI customers, to produce false financial statements or to obtain a loan from Cordell on false representations (or

to obtain this loan at all).[3]   Thus, Mr. Smith has no basis on which to rest an opinion that either Mr. Kaplan or Mr. Silverman fell afoul of Rule 4-1.2.  ***In fact, Mr. Smith agrees that he has not reached any conclusions as to Mr. Silverman or Mr. Kaplan's knowledge in connection with the loan on which Plaintiff has sued.***  Exhibit 2 at 46-47. He made no effort to distinguish them. *Id.* at 48. He was aware that there would likely be distinctions, but he focused on the firm's liability. *Id.*

In the disclosures, Plaintiff asserts that the Defendants were aware or should have been aware from five documents that Okun's Ponzi scheme was ongoing during their representation. Exhibit 1 at 3, Para. 4.  Copies of the documents are attached hereto as Exhibit 3.  None of these documents establishes that Okun was continuing to take money from the QI customers after KPKB was retained at the end of November 2006.  None establish that their services were used to take any funds from the QI customers. Certainly none of them establish that Kaplan or Silverman provided assistance to take QI funds after their firm was retained.  All that the documents establish is that Okun had taken funds in the past, that he had been advised that the conduct was potentially criminal or fraudulent, and he was advised to end it and repay all funds.[4] Not one of the documents links Silverman or Kaplan's services to takings after the firm was retained.  And indeed, this would not support the claims Cordell brings, even if they did.

Although Exhibit 1 which purports to disclose Mr. Smith's opinions clearly states that Mr. Kaplan and Mr. Silverman had an obligation to withdraw, at deposition Mr. Smith was only comfortable stating that his opinion was that the Firm had to withdraw. Exhibit 2 at 53. See also *Id.* at 54 (no basis concerning Mr. Silverman's awareness); 62 (no basis for opinion on Silverman or Kaplan's knowledge re April loan); 64-65 (unaware which lawyers assisted in April loan which he believes assisted Okun in conduct that could be characterized as fraudulent or criminal).

---

[3] Certainly, they learned of past misconduct, which Okun advised them he had stopped and would rectify.

[4] Mr. Smith was "unclear" about when the KPKB representation began in comparison to the conduct described by the Perkins memos. Exhibit 2 at 21.  Mr. Smith was not furnished with any information as to whether the lawyers knew that Okun's wrongdoing was still going on during the KPKB representation. *Id*. at 21-22.  That might make a difference in his opinions. *Id.* at 22. Mr. Smith neither read nor requested depositions. *Id.* at 9-10.  Indeed, Mr. Smith recognized that "there might be other additional facts that I don't know yet."  *Id.* at 22.

Even more importantly, nothing provided to Mr. Smith or relied on or assumed by him links either Mr. Kaplan or Mr. Silverman to representations made to Cordell, to advice to borrow $7 million from Cordell, to false financials allegedly given to Cordell, or to any work on the loan. Thus, there is no basis for Mr. Smith to opine that Kaplan or Silverman knew or should have known that Okun was using their non-existent services to commit a fraud or crime in connection with the loan.

Interestingly, while Mr. Smith testified to conclusions about the inaccuracy of the representations made about the $7 million Cordell loan, both its purpose and the financial disclosures (exhibit 2 at 17, 23, 26-27), he did not review any documents relating to the loan or any testimony about the loan. No loan documents or disclosures are listed in Exhibit 1. More importantly, as addressed below, no opinions about the loan were expressed in the disclosure, Exhibit 1.

All that the documents and stated assumptions support is that Okun took QI money before KPKB was retained and KPKB lawyers were told of this past misconduct and confirmed that it was not appropriate. Therefore, because Mr. Smith has relied on irrelevant facts established concerning a time when KPKB did not represent Okun, he has failed to rest his opinion on adequate factual bases or to employ a reliable method to reach his conclusions. There is simply no basis revealed by the disclosures in Exhibit 1 to allow Mr. Smith to testify to the conclusion that the lawyers had to withdraw. He never examined the temporal relationships[5]. He never determined what each lawyer did – how their services were involved in committing a crime or fraud. Mr. Smith was surprisingly unprepared to address how his opinion would be affected if the firm was *not* involved in Okun's prior misconduct, because Okun was a new client. He could not say if the firm was permitted to represent Okun in borrowing money to pay off the victims of the prior misconduct. Exhibit 2 at 37. This suggests that he was simply not applying the Rules he cited and had not given any thought to what facts mattered in concluding

---

[5] Mr. Smith was clear that he did not know if the firm had reason to believe that there were additional transfers from the QIs to Okun from November 2006 (when KPKB was retained) to February 2007 (when a third loan was closed), but it would still be his opinion that the firm could not represent Okun in lending transactions to entities other than the QI companies. Ex. 2 at 40-41. He based this on an assumption or fact that the loans were part of an ongoing Ponzi scheme to create liquidity *Id.*, but this assumption was not disclosed in his report and he did not identify its source.

7

_____
KENNY NACHWALTER, P.A.

that the Rules forbade the engagement. His proffered opinions fail the basic requirements of Rule 702 (b) and the *Daubert* line of cases.

### *Lack of Fit and Helpfulness*

Plaintiff has sued on two theories: aiding and abetting a fraud and conspiring to commit a fraud. The elements of the first claim are (1) the existence of an underlying fraud; (2) the defendants' ***knowledge*** of the fraud; and (3) the defendants' provision of ***substantial assistance*** to advance the commission of the fraud. *Cordell Consultant Inc. v. Abbott*, Case No. 13-10143 (11th Cir. 2014). The elements of the second claim are (a) ***an agreement*** between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) ***the doing of some overt act in pursuance of the conspiracy***, and (d) damage to plaintiff as a result of the acts done under the conspiracy. *Id.* Neither claim can be proved by negligence or failure to act, which is the basis on which Mr. Smith's testimony rests.

Mr. Smith asserts that Defendants were required to withdraw. Exhibit 1 at 2. He also asserts that they were forbidden by the Rules of Professional Conduct to continue in the representation of Okun if they knew or should have known their representation would assist Okun in criminal or fraudulent conduct. *Id.* This appears to be a negligence framework, in which liability may rest on failure to recognize an issue. However, the claims in this case rest on theories of intentional wrongdoing: knowing and active participation. The question for liability is not whether Defendants were supposed to withdraw from representing Okun. It is whether each one of them was an active and knowing participant that helped Okun in his wrongdoing. Whether they were obliged to withdraw is misleading and irrelevant to the claims Cordell has brought.[6] What Cordell complains of is that it made a $7 million loan to Okun, KPKB closed the

---

[6] The rules "are not designed to be a basis for civil liability." *Beach Higher Power Corp. v. Rekant*, 832 So. 2d 831, 833 n.2 (Fla. 3d DCA 2002) (noting that the Rules of Professional Conduct "clearly provide that they are not to be applied for the purpose of determining . . . liability"). Violations of the Code of Professional Responsibility may be some evidence of negligence in an appropriate case, although of course this is not a negligence case. *See generally Oberon Invs., N.V. v. Angel, Cohen & Rogovin*, 492 So. 2d 1113, 1114 n.2 (Fla. 3d DCA 1986), *rev'd on other grounds*, 512 So. 2d 192 (Fla. 1987). *See also Pressley v. Farley*, 579 So. 2d 160, 161 (Fla. 1st DCA 1991). Even in an appropriate negligence case, the court must balance the "probative value of such evidence was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or needless presentation of cumulative evidence." *Greenwald v. Eisinger, Brown, Lewis & Frankel, P.A.*, 118 So.3d 867 (3d DCA 2013).

loan, and Cordell believes that it was defrauded in connection with the loan. Only if each lawyer was active in that fraud can there be liability on the part of the individual lawyer.

When an expert applies a standard that is not relevant to the theories of legal liability, the potential for confusing the trier of fact is significant. Such testimony therefore fails the Daubert test, because it does not fit the case and is not helpful. *See generally Corwin v. Walt Disney Co.,* 475 F.3d 1239, 1250-51 (11th Cir. 2007)(exclusion of expert whose testimony addressed ideas rather than expression of ideas in copyright case); *Herzog v. Castle Rock Entm't,* 193 F.3d 1241, 1248 (11th Cir. 1999) (per curiam) ("well-reasoned" district court opinion affirmed and annexed to Eleventh Circuit ruling).

Mr. Smith's opinions also fail to distinguish the important issues. The Rules of Professional Conduct he cites apply only to the lawyer's own involvement in advice to, services relating to, or assistance to the client's misconduct. Because he did not consider whether Okun engaged in misconduct after KPKB was retained, he included permissible behavior within his opinion of impermissible conduct. Furthermore, he did not address what specific advice, assistance, or services **the individual lawyers** rendered in connection with that misconduct *See generally* Exhibit 2 at, e.g., 27.

The Eleventh Circuit has recognized the impropriety of failing to make those distinctions, finding such opinions unhelpful to the trier of fact and forbidden by Daubert. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1027-28 (11th Cir. 2014)(expert's testimony and model failed to distinguish permissible and impermissible activity and thus overstated damages; Court

---

The Preamble to the Rules of Professional Conduct, Scope of Rules section, states that "**Violation of a rule should not itself give rise to a cause of action** against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. . . . The rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. **They are not designed to be a basis for civil liability**. . . . The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, **nothing in the rules should be deemed to augment any substantive legal duty of lawyers** or the extra-disciplinary consequences of violating such duty. Nevertheless, since the rules do establish standards of conduct by lawyers, a lawyer's violation of a rule may be evidence of a breach of the applicable standard of conduct."

Because civil liability requires a specific standard of conduct -- substantial assistance or an agreement and an overt act -- the asserted violation of the Rules is not the applicable 'standard of conduct' and is, therefore, legally relevant and testimony regarding it will create confusion and unfair prejudice under Fed. R. Evid. 403.

concluded her opinions "would not assist the trier of fact in determining a fact in issue in this case" and "her methodology [wa]s not sufficiently reliable"); *Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1233-34 (11th Cir. 2009)(excluding proffered expert testimony on damages because "Boca's injury and damages theory would still hold Tenet accountable for even those portions of its overcharging that were not unlawful according to the liability theory"). As the Court wrote of the expert testimony in *Boca*, because "Boca's injury and damages opinion was not confined to charges that its liability theory would consider unlawful, it was too broad. It was ill-fitting." *Id.* Thus it was not admissible.

In determining whether the evidence appropriately assists the trier of fact, the Court must consider the potential of the expert's testimony to mislead and confuse the trier of fact. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1111 (11th Cir.2005) (emphasizing the enhanced importance and role Federal Rule of Evidence 403 plays in excluding overly prejudicial expert evidence); *Haddad v. Rav Bahamas, Ltd.*, 589 F. Supp. 2d 1302, 1306 (S.D. Fla. 2008). Here, where the legal liability requires knowledge or agreement and assistance or an overt act, the expert's testimony on what the lawyers should have known and their failure to withdraw will create confusion. Where the expert failed to consider carefully what the lawyers were permitted to do and prohibited from doing, he failed to apply a rigorous and appropriate method. Thus, his opinions are ill-fitting and must be excluded.

There is a further problem with the fit of Mr. Smith's opinions. He based his opinions on the imputation of knowledge one lawyer had to all the other lawyers. Exhibit 2 at 49. There is no basis in the Rules of Professional Conduct to impute knowledge of a client's wrongdoing to another lawyer merely because they are in the same firm. Imputation will disqualify lawyers, but it is not a basis for discipline or liability of a specific individual. Mr. Smith could not identify any legal basis for this imputation. *Id.* at 49.

### *Violation of Rule 26*

Mr. Smith's opinions were not completely covered in the disclosures, the bases on which he reached the opinions were not fully disclosed, and Mr. Smith's opinions were not final at the time of his deposition. In fact, he did not prepare a written report, but reviewed a draft prepared by counsel. He was not even certain if changes were made to the disclosures after his review. He never signed the report. All of these circumstances violate Fed. R. Evid. Rule 26.

- Mr. Smith did not write a report and was not the author of the disclosures. Exhibit 2 at 7. He was not sure if the final disclosure was identical to the one he reviewed. *Id*. at 13. He did not sign it. *Id*. at 13.

- Mr. Smith reached an opinion that the April 2007 loan and a December 2006 loan were part of a continuing course of fraudulent activities. *Id.* at 17, 23. This was not disclosed in Exhibit 1.

- Mr. Smith relied on facts not disclosed in his report, although he could not identify their source in his deposition:

  "I have been told or I read that the lender was misinformed of the purpose of the loans and that the lender was provided with financial statements that were or may have been materially inaccurate." Exhibit 2 at 23-24.

  He assumed that the $7 million loan was obtained to establish liquidity in anticipation of demands. *Id.* at 17.

  He assumed that Cordell was not advised of the purpose of the loan, *Id.* at 23, and was misinformed about its purpose. *Id.* at 26-27.

- Mr. Smith was "told to assume certain things, certain allegations that have been made, assume that they are accurate," *Id*. at 65, but those assumptions were never stated in Exhibit 1.

- Mr. Smith's opinions were not fully formed.

  "I would need to, I think, to understand a bit more about the circumstances of this transaction before I could really come to a firm conclusions on that." *Id.* at 24.

  He would need to see counsel opinion letters. *Id.* at 25.

  He also would need to see correspondence and other documents. *Id.*

  "I would like to learn more facts." *Id.* at 71.

  When asked under what circumstances a lawyer could believe his client's representations, Mr. Smith testified "that gets into a whole wide spectrum of possible facts which I am not fully prepared to discuss today." *Id.* at 36.

  When asked about the ability of KPKB to represent Okun in connection with loans in December, he stated: "I think there is probably more I need to know about that transaction." And with respect to the April loan "There may be more I need to

>know." *Id*. at 42. And "I think I would need to know more about the circumstances surrounding the loan." *Id.* at 43.
>
>Although the KPKB Opinion Letter was attached to the Second Amended Complaint, D.E. 97, Exhibit 2, Mr. Smith was not familiar with it at the time the disclosures were made or at the time of his deposition. *Id.* at 25.
>
>When asked the basis on which he concluded that knowledge held by one lawyer would be imputed to others, he testified: "I would have to consider that further." *Id.* at 49.

From October 27, 2014 to April 24, 2015, Plaintiff had the opportunity to correct these Rule 26 violations, to provide the expert with more data, and to fully disclose complete and completed opinions. Plaintiff's counsel recognized this need in November 2014:

>**From:** IrwinGilbert
>**Sent:** Tuesday, November 04, 2014 9:09 AM
>**To:** Deborah Corbishley
>**Subject:** Re: Cordell Expert deadline
>
>I would like to revise my disclosure and add an expert. We would agree to make a supplemental disclosure on smith and a new full disclosure. You could take your depo and then make your disclosures

Plaintiff's counsel simply never undertook to complete what he knew was needed in the ensuing six months. Instead, he submitted the exact same document he had previously submitted.

Plaintiff's disclosure of the opinions it expects Mr. Smith to provide fails to disclose opinions that can be admitted in this action. The opinions do not provide a basis on which the trier of fact can determine a fact at issue. Whether the law firm had an obligation to withdraw or was not permitted to engage in specific conduct is not the basis for liability in this case and allowing opinion testimony on it confuses the issues. Furthermore, the expert failed to make an adequate study or to apply the standards he relied on to actual facts as to each defendant. Finally the disclosures in Exhibit 1 were inadequate, and despite a six month period to correct them, Plaintiff's counsel ignored his obligations.

As the Court has recently ruled, when striking Plaintiff's other expert, "Compliance with Rule 26 is not a casual requirement. Under Rule 37(c), failure to timely provide expert

information is sanctionable: If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. . . .

Plaintiff's failure has caused Defendants great harm because Defendants have been denied a complete statement of the basis for Lord's opinions, a complete statement of [the expert's] opinions and have been unable to cross-examine [him] about many of [his] opinions." Order Granting Defendants Kaplan and Silverman's Motion To Strike Expert Report of Sara Lord D.E. 585 at 5-6 (citations omitted).

### Conclusion

For all of the foregoing reasons, the opinion testimony Plaintiff hopes to offer must be excluded as failing to meet the requirements of Rule 702, Rule 26, the *Daubert* line of cases, or the liability standards for the claims Plaintiff brought in this action.

### CERTIFICATE OF GOOD FAITH CONSULTATION

On July 17, 2015 at 11:30 a.m., the undersigned lawyer sent an email with a detailed statement of the issue and relief sought, asking to schedule a meet and confer by 2 p.m. due to the motion deadline. Mr. Gilbert immediately responded that he was unable to have a conference in that time period, due to the press of his efforts to prepare documents for filing. The undersigned asked if he was filing any motions that required a meet and confer and noted that it would be necessary to receive a detailed statement of those issues and a chance to confer before 2 p.m. if the process was to be meaningful. Mr. Gilbert was not available to have such a conversation in that time frame.

Respectfully submitted,

Dated: July 17, 2015  
Miami, FL

s/ Deborah S. Corbishley  
Richard H. Critchlow, Esq. (FL Bar #155227)  
Deborah S. Corbishley, Esq. (FL Bar #588229)  
KENNY NACHWALTER, P.A.  
201 South Biscayne Blvd., Suite 1100  
Miami, Florida 33131  
Telephone: (305) 373-1000  
Facsimile: (305) 372-1861  
rcritchlow@knpa.com  
dcorbishley@knpa.com

*Counsel for Defendants, Abbey L. Kaplan and Steve I. Silverman*

*Co-counsel for Defendant Steven I. Silverman*
Edward R. Shohat, Esq.
JONES WALKER
201 South Biscayne Blvd., Suite 2600
Miami, Florida 33131
Telephone 305.679.5700
Facsimile 305.679.5710
eshohat@joneswalker.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on July 17, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

/s Deborah S. Corbishley
Deborah S. Corbishley

KENNY NACHWALTER, P.A.

*Cordell Consultant, Inc. Money Purchase Plan and Trust, v. Eliot C. Abbott, et al*

**SERVICE LIST**

Irwin R. Gilbert, Esq. (FL Bar #099473)
Bryan J. Yarnell, Esq. (FL Bar #088900)
GILBERT YARNELL LAW OFFICES
11000 Prosperity Farms Road,
Suite 205
Palm Beach Gardens, FL 33410
Telephone: (561) 622-1252
Facsimile: (561) 799-1904
igilbert@gilbertyarnell.com
byarnell@gilbertyarnell.com
*Counsel for Plaintiff*

Richard H. Critchlow, Esq. (FL Bar #155227)
Deborah S. Corbishley, Esq. (FL Bar #588229)
KENNY NACHWALTER, P.A.
201 South Biscayne Blvd., Suite 1100
Miami, Florida 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
rcritchlow@knpa.com
dcorbishley@knpa.com
*Counsel for Defendants, Abbey L. Kaplan and Steve I. Abbey Kaplan*

Ramon Rasco, Esq. (FL Bar #0617334)
PODHURST ORSECK, P.A.
City National Bank Building – 8th Floor
25 West Flagler Street
Miami, Florida 33130
Telephone: (305) 358-2800
Facsimile: (305) 358-2382
rrasco@podhurst.com
*Counsel for Defendant, Eliot C. Abbott*

Marilyn G. Kohn, Esq.
KLUGER, KAPLAN, ABBEY KAPLAN,
KATZEN & LEVINE, P.L.
201 S. Biscayne Blvd., 17th Floor
Miami, Florida 33131
Phone: (305) 379-9000
Facsimile: (305) 379-3428
mkohn@klugerkaplan.com
*Counsel for Defendants, Abbey L. Kaplan and Steve I. Abbey Kaplan*

Howard D. DuBosar, Esq. (FL Bar #729108)
THE DUBOSAR LAW GROUP, P.A.
1800 N. Military Trail, Suite 470
Boca Raton, Florida 33436
Telephone: (561) 544-8980
Facsimile: (561) 544-8988
hdubosar@dubosarnavon.com
*Counsel for Defendant, Kluger, Peretz, Kaplan & Berlin, P.L.*

Edward R. Shohat, Esq.
JONES WALKER
201 South Biscayne Blvd., Suite 2600
Miami, Florida 33131
Telephone 305.679.5700
Facsimile 305.679.5710
eshohat@joneswalker.com
*Co-counsel for Defendant Steven I. Silverman*

15

_____
KENNY NACHWALTER, P.A.