UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  11-CV-80416-RYSKAMP

CORDELL CONSULTANTS, INC.,
MONEY PURCHASE PLAN,
a Virginia corporation,
      Plaintiff,
v.

ELIOT C. ABBOTT, an individual;
DALE S. BERGMAN, an individual;
ABBEY L. KAPLAN, an individual;
STEVEN I. SILVERMAN, an individual;
and KLUGER, PERETZ, KAPLAN
& BERLIN, P.L., a Florida Professional
Limited Liability Company,
      Defendants.
_____/

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff ("Cordell"), pursuant to Fed. R. Civ. P. 56(a), moves for Partial Summary Judgment Striking Defendants' Affirmative Defenses, and in support thereof, states:

**SUMMARY JUDGMENT STANDARD**

1.      Pursuant to Fed. R. Civ. P. 56, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Thereafter, the non-moving party must bring forth evidence sufficient to create a genuine issue of material fact.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

2.      The Parties are before the Court under 28 USC §1332, diversity jurisdiction.  The

claims asserted by Plaintiff are State law claims which accrued in Florida.  The claims and the Defendants' Affirmative Defenses are thus governed by Florida law.  *Erie R. Co. v. Tompkins*, 304 U.S. 64, 88 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941).   Cordell's injury was caused by Defendants' actions in Florida, so the law of Florida governs the foregoing affirmative defenses. *Bishop v. Florida Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980).

## BACKGROUND

3.      Plaintiff sues the defendants for aiding and abetting fraud and for conspiracy.  See Second Amended Complaint ("SAC") at D.E.97.  Defendants Abbey L. Kaplan ("Kaplan"), Steve I. Silverman ("Silverman"), Eliot Abbott ("Abbott"), and Kluger, Peretz, Kaplan & Berlin, P.L. ("KPKB"), filed nearly identical Affirmative Defenses.  *See* D.E. 189, 190, and 200.[1]

4.      Defendants affirmative defenses include:  (i) No Vicarious Liability; (ii) Unclean Hands; (iii) Bar by Participation; (iv) *In Pari Delicto*; (v) Assumption of Risk; (vi) Intervening Cause; (vii) "Mitigation" (Failure to Mitigate), (viii) Causation and Abandonment of Collateral; (ix) Laches; and (x) Spoliation.  See D.E. 189, 190 and 200.

## SUMMARY OF MATERIAL FACTS

5.      The Statement of Undisputed Facts ("Statement") filed herewith contains the recital of all facts and sources relevant and material to this motion.  Plaintiff refers herein to that Statement by reference to the relevant paragraph number(s).

6.      Abbott, Kaplan and Silverman had actual knowledge of the following facts:

a.  Okun was operating a criminal Ponzi scheme……Statement ¶¶ 4- 13.
b.  In 2006, Okun had illegally taken $150 Million from the QIs…Statement ¶¶ 4-13,

---

[1] KPKB also asserted a defense that an entity could not be liable for a conspiracy with its own agents.  D.E.200, p. 14.  Cordell contended that KPKB's conspiracy was with Edward Okun, not themselves, and that KPKB was vicariously liable for the acts of its agents.  D.E. 119 at ¶ 30. On appeal, the Eleventh Circuit resolved this dispute by holding that KPKB is vicariously liable for any torts the Defendants are proven to have committed in this case. D.E. 186 at pp. 9-10.

c.   The Perkins Memo warned that Okun's personal financial statements, used to obtain loans, was false and misleading.  Statement at 5.  Each of the defendants received this Perkins Memo….Statement at 6.

d.   Since Defendants knew that Okun had removed some $150 Million in deposits from the QI companies, they knew that until Okun obtained $150 Million to replace it, he would have to use funds entrusted by later depositors to meet the obligation to older depositors, in effect stealing from Peter to pay Paul.

e.   On December 1, 2006, the respective defendants received and reviewed Okun's Personal Financial Statement which grossly understated Okun's liability to the QI entities and falsely characterized the nature of the liability as 'loans' when in fact the funds had been illegally taken.  See Statement at 36.

f.   December 14, 2006 Okun is instructed by defendants that its illegal to remove funds from the QIs and that he must return the money…..  Statement at 11.

g.   Defendants knew that the only way Okun could comply with their instruction to repay the stolen money was to borrow from third party lenders.  Defendants also knew that in order to obtain loans, Okun would have to supply financial statements that mischaracterized the stolen funds as loans.

h.   Despite this instruction and despite warnings from Perkins, KPKB through Abbott and Bergman negotiate purchase of 1031 Advance, Inc. and insist on right of Okun to remove funds.  Statement ¶¶ 15, 16.

i.   Penta Advisory Services was engaged to create a list of Okun's transfers from the QI's from five QIs but not 1031 Advance, Inc., in order to prepare promissory notes documenting each taking and to quantify what must be returned. Statement¶¶ 17, 18.

j.   Silverman is managing relationship with Penta and knows that in March 2007, the scope of Penta's work is modified to include an examination of transfers by Okun from 1031 Advance, Inc. ¶ 18, 23.

k.   Any transfer from 1031 Advance must have occurred after its purchase on December 20, 2006---five days after Okun is instructed it is illegal to take any money from the QI companies.

l.   On March 30, 2007, Janet Dashiell, President of 1031 Tax Group, sends email to Okun revealing: (i) Okun has removed more than $172 Million from the QIs which now owe depositors $175 Million; (ii) during March 2007, Okun was raiding QI customer accounts to pay the expenses of Okun's other companies; (iii) 1031 Tax Group is insolvent---it can't meet current liabilities.  This e-mail is forwarded to Kaplan and Abbott.  See Statement at 19.  Kaplan, Silverman and Abbott communicated on a regular basis.  Statement at ¶ 26.  The significance of this communication is so great, an inference is drawn that Kaplan and Abbott would disclose this information to Silverman;

m.   A "New Matter" email is circulated to "All" at the Kluger Peretz law firm that identified the prospective loan from Cordell to Okun on April 18, 2015. Abbott and Kaplan specifically receive this email. It may be inferred that Steve Silverman received this e-mail as well.  Statement at 24.

n.   March 30, 2007 Kaplan suspends all work for Okun due to non-payment. No further work can be performed for Okun except as authorized by Kaplan.  Statement at 20.

o.  Kaplan, Silverman and Abbott knew that Okun's liability to the 1031 QI companies is at least $150 Million.  Statement at ¶13.[2] Kaplan and Abbott later have written notice that the liability that Okun's liability exceeds $172 Million.  See Statement at 19.

p.  On April 20, 2007, defendant Abbott attended a closing on behalf of the KPKB firm and delivered an Opinion Letter and Borrower's Affidavit, both drafted by KPKB, and Okun's Personal Financial Statement and represented to Plaintiff that there had been no material change in Okun's financial condition since that statement had been prepared.  See July 17, 2017 Declaration of Rodrigues at 7.

7.      Plaintiff did not know any of the facts set forth in paragraph 6 above.  See July 17, 2015 Declaration of Robin Rodriguez (hereafter "Rodriguez Dec.") at paragraph 15.

8.      Plaintiff sues upon the defendants' knowing and material assistance in the underlying fraud by Edward Okun.  That fraud is defined as follows:  Okun launched a criminal Ponzi scheme which involved both bilking customers (or 'exchangers') of IRS Section 1031 Qualified Intermediaries ("QIs") and borrowing money from lenders such as Cordell in order to carry out, expand and conceal the Ponzi scheme.

9.       Abbott managed the transactional work performed for Edward Okun and his companies.   Statement at paragraph 59.   Abbott is therefore responsible for the respective transactions, including the April 20, 2007 loan.

10.      Kaplan, Silverman and Abbott communicated on a regular basis [in connection with the Okun matters] "just because of the volume of work that Ed represented to the firm".  Statement at paragraph 26.

11.       On April 20, 2007, Okun obtained $7 Million from Plaintiff which in part was to be used to conceal a prior act of wire fraud and money laundering---that is, Okun had to obtain

---

[2] The defendant attorneys obtained documents from Okun such as promissory notes that reflected just a portion of the transfers of money from the QI companies.  The December 19, 2006 Kaplan e-mail to Abbott and Silverman states that $151,618.686 was "borrowed" from the QI's based upon his review of those documents.  This did not include any accrued interest as required by the notes that did exist.  At the rate of interest stated in the Notes, millions in interest was owed. However, Kaplan's secretary prepared a schedule of the same documents that totaled only $146 Million---still substantially more than the $134 Million Okun listed on his financial statement.

funds to close a transaction for an exchanger who entrusted his company with the proceeds of an earlier sale of real property.  Since Okun had illegally taken the funds, the funds were not available on April 20, 2007.  Okun's action in taking the funds amounted to wire fraud.  Using loan proceeds to conceal the earlier wire fraud is an act in violation of 18 USC 1956 et seq.

12.     The Defendants knew that Okun's removal of the exchanger's funds was illegal.  Plaintiff did not.  See Rodriguez Dec. at 10 -18.  Florida lawyers are not permitted to provide representation to clients engaged in criminal acts.  See Rules Regulating the Florida Bar at Rule 4-1.2(d).  Florida lawyers are required to reveal the client's confidential communications when necessary to prevent a client from committing a crime.  See Rule 4-1.6(b)(1).  A lawyer shall be responsible for another lawyer's violation of the Rules Regulating the Florida Bar if the lawyer is a partner…in the law firm in which the other lawyer practices…and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.  See Rule 4-5.1(c)(2).

13.     Kaplan, Silverman and Abbott were all partners in KPKB between November, 2006 and May, 2007.

**<u>DEFENDANTS' "NO VICARIOUS LIABILITY" DEFENSE</u>**

14.     The defendants each contend that they can be liable only for their own acts or the acts of persons under their direct supervision and control.  Citing to Section 621.07 Fla. Stat., the defendants contend that they cannot be held vicariously liable as they did not directly supervise or control the lawyers responsible for the acts complained of.

15.     Section 621.07 Fla. Stat., states as follows:

> any officer, agent, member, manager, or employee of a corporation or limited liability company organized under this act shall be personally liable and accountable only for negligent or wrongful acts or misconduct committed by that person, or by any person under that person's direct

supervision and control, while rendering professional service on behalf of
the corporation or limited liability company to the person for whom such
professional services were being rendered.

## LEGAL ARGUMENT

Defendants misapply § 621.07 Fla. Stat. as, under the facts here, it cannot insulate
them from joint and several liability.  When the Defendants engaged in the representation of
Okun with the express intent to help him conceal the criminal Ponzi scheme, their
participation in the conspiracy is their own "wrongful act" within the meaning of Section
621.07. Defendants are jointly and severally liable for losses stemming from the conspiracy,
regardless of which attorney's role in the conspiracy proximately caused the loss.

In *Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 460 (Fla. 5th DCA 1999), the
court reinstated a conspiracy claim against partners of a law firm, notwithstanding the partners'
assertion of the language of § 621.07.  *Id*. at 461.  The court explained:

> A conspiracy is a combination of two or more persons by
> concerted action to accomplish some purpose by unlawful means.
> Conspiracy is not a separate or independent tort but is a vehicle for
> imputing the tortuous actions of one co-conspirator to another to
> establish joint and several liability.

*Id*. at 460.  The plaintiff, Judge Hoch, alleged that partners at the Rissman law firm organized a
series of questionable seminars with knowledge that attorneys at the firm would disseminate
"inside information" regarding judges to the seminar's attendees.  *Id*.  The partners did this as
part of a "common plan or scheme" to "promote their own economic interest" by unduly
influencing judges.  *Id*. at 460.  The plaintiff alleged that he was slandered by comments at
Defendants' seminar, and that these comments were later circulated in a memorandum.  *Id*.  The
court found that these facts, if true, would constitute a civil conspiracy for which the partners
were jointly and severally liable.  *Id*.

The court considered § 621.07, but did not limit liability to only those attorneys who specifically targeted Judge Hoch.  *Id.* at 461.  Instead, the court found that joint and several liability applied to all Rissman defendants who "engaged in wrongful acts or misconduct" in connection with the defamatory seminars.  *Id.*  This is analogous to the present case.  Just as each Rissman defendant who engaged in the general conspiracy would be specifically liable for Judge Hoch's damages, each KPKB lawyer who knowingly assisted Okun's ongoing fraud, and who had knowledge that the firm was closing loans to conceal that fraud, is liable for damages stemming from the firm's actions, including Cordell's damages.

Section 621.07 may not be used as a shield by any KPKB Defendant who knew that lawyers at the firm were assisting Okun's illegal activities and allowed those activities to continue.  As recognized by the Middle District of Florida, a partner's knowledge of and failure to report an ongoing fraud perpetrated by an attorney at the same law firm is a "wrongful act" within the meaning of Section 621.07.  *Krehling v. Baron*, 900 F. Supp. 1574, 1577 (M.D. Fla. 1995).  In *Krehling*, the partner neither supervised the actions of the attorney committing the fraud nor did the partner directly participate in the fraud.  Nevertheless the partner's willful acquiescence to the fraud violated Fla. Bar Rule 4-5.1(c)(2), which provides:

> A lawyer shall be responsible for another lawyer's violation of the Rules of Professional conduct if:
> (2) the lawyer is a partner in the law firm in which the other lawyer practices… and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

*Id.* at 1577 (citing to the Rules Regulating the Florida Bar, 4–5.1(c)(2) (1994).  By violating a rule of professional conduct, the partner committed a "wrongful act" under Section 621.07 and could not use the statute as a shield against a former client's Racketeer Influenced and Corrupt Organizations (RICO) action.  *Id.*

Applying *Krehling* to the present case, any Defendant who knew that KPKB attorneys were using false financial statements to obtain loans for Okun, but failed to take reasonable remedial actions to stop those attorneys, committed a "wrongful act" within the meaning of Section 621.07.  Furthermore, any attorney who knew that Okun was acquiring loans to conceal past crimes, but took no action to prevent the KPKB firm from assisting this crime,  committed a "wrongful act" by violating Bar Rule 4-1.6.

Section 621.07 did not create a new lesser classification of liability for conspirators belonging to a professional corporation as compared to other occupations.  Rather, in overturning the traditional prohibition on 'learned professionals' providing services through corporations, "the legislature … clearly intended to affirm the common law pertaining to professional services and the common law liabilities flowing from the negligent performance of such services." *Moransais v. Heathman*, 744 So. 2d 973 (Fla. 1999); *see In re The Florida Bar*, 133 So.2d 554, 556 (Fla.1961) ("The corporate entity as a method of doing business will not be permitted to protect the unfaithful or the unethical").

## DEFENDANTS' 'UNCLEAN HANDS' DEFENSE

16.     Defendants cannot invoke 'Unclean Hands' because the present action is an action at law, not equity.  Cordell seeks purely legal damages based on Defendants' intentional tort of aiding and abetting fraud and conspiracy.

17.     Kaplan, Silverman, and Abbott have not specified how they were the target of Cordell's alleged wrongdoing; rather, they apparently claim that negligence is an affirmative defense to their intentional tort: "Cordell … knew Okun was insolvent when it made the loan, chose to ignore the red flags, and instead made the loan and *sought to blame others for its lack of*

*care*.  D.E. 189, p. 27; D.E. 190, p. 23 (italics supplied).  Thus, Defendants conflate their claim of negligence with the intentional wrongdoing required to invoke unclean hands.

18.     Defendants can neither allege nor prove any set of facts that establish that Cordell intentionally performed a wrongful act or caused an unlawful act to be performed.   See Rodriguez Dec. at paragraph 15.  Cordell did not engage in any action directed at the defendants. Ultimately, Defendants would be contending that Cordell intentionally made a loan it knew could not be repaid, a premise so preposterous and unsupported by any fact that it must be rejected as a matter of law.  See Rodriguez Dec.at paragraph 22.

## <u>LEGAL ARGUMENT</u>

The defense of unclean hands does not apply to an action for damages.  *Regions Bank v. Commonwealth Land Title Ins. Co.*, 977 F. Supp. 2d 1237, 1268 (S.D. Fla. 2013), appeal dismissed (Jan. 27, 2014).   *See also Regions Bank v. Old Jupiter*, LLC, 10-80188-CIV, 2010 WL 5148467, at *6 (S.D. Fla. 2010) aff'd, 449 Fed. Appx. 818 (11th Cir. 2011) ("[t]he unclean hands doctrine traditionally applies only to claims for equitable relief or in opposition to equitable defenses … Where, as here, a plaintiff seeks to recover only damages, the unclean hands doctrine is not applicable." ) (citing *Mitchell Bros. Film Group v. Cinema Adult Theater*, 604 F.2d 852, 865 n. 26 (5th Cir.1979); *Scheiber v. Dolby Lab., Inc.*, 293 F.3d 1014,1022 (7th Cir.2002); *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 756 n. 10 (3d Cir.1990).

'Unclean hands' is an equitable affirmative defense which applies where: (1) the plaintiff has engaged in wrongdoing and (2) the defendant was ***injured*** by or was the target of the plaintiff's wrongdoing.  *Gastaldi v. Sunvest Resort Communities, LC*, 08-62076-CIV, 2010 WL 457243, at *8 (S.D. Fla. 2010).

Unclean hands applied when a plaintiff wrongfully attempted to avoid a judgment by transferring property to his wife, who inappropriately sold that property to an innocent third party, and the plaintiff filed an action against the innocent third party. *McIntosh v. Hough*, 601 So. 2d 1170, 1173 (Fla. 1992).

Even if Plaintiff's conduct was 'disreputable' it would be "… entirely irrelevant where the party asserting unclean hands is not the target of, and has taken no actions in reliance on that conduct." *McCollem v. Chidnese*, 832 So. 2d 194, 196 (Fla. 4th DCA 2002). In *McCollem*, an equity case, the plaintiff, was awarded a deficiency judgment when the defendant failed to make a mortgage payment. The trial court reduced the plaintiff's award based on unclean hands, finding that the plaintiff, in connection with the sale, provided the defendant with "documentary stamps" which inappropriately reduced the sale-related fees and commissions that should have been paid to third parties. *Id*. at 195. Since the defendant failed to establish that the plaintiff's wrongdoing played any role in the defendant's failure to make payments, the appellate court reversed this erroneous application of unclean hands. *Id*. at 196.

## THE DEFENSE OF 'BAR BY PARTICIPATION'

19. Under the heading, "bar by participation," Defendants claim they may not be held liable because Cordell was a "willing participant" in Okun's business practices and "reaped benefits from them." (D.E. 189, pg. 27). These assertions partially restate the factual grounds for two of their other defenses: *in pari delicto* and unclean hands.

20. Plaintiff could not be a "willing participant" if it did not know there was an improper scheme. See Rodriguez Dec. at paragraph 23.

## LEGAL ARGUMENT

A thorough search of legal databases reveals no examples of a court ruling for or against a defendant's claim of "bar by participation."  As an ostensibly non-existent legal defense, "bar by participation" cannot insulate Defendants from liability.

Unlike the Defendants, Cordell was not aware that Okun was operating a Ponzi scheme, was unaware that Okun's personal financial statement was false or fraudulent, that Okun had obtained $172 Million by means of mail fraud, wire fraud or money laundering.  Plaintiff was not aware that Okun was borrowing $7 Million to conceal the Ponzi scheme.  Cordell was not a "willing participant" in wrongdoing.

## DEFENDANTS *IN PARI DELICTO* DEFENSE

21.     Defendants assert that Cordell was *in pari delicto*, meaning that Cordell engaged in equal or greater wrongdoing of the same nature that they committed.  However, Defendants have not and cannot offer any competent or material facts to support this assertion.

22.     Based on the facts provided in this Motion, Cordell alleges that Kaplan, Silverman, and Abbott knowingly aided and abetted Ed Okun's criminal Ponzi scheme which included borrowing money from Plaintiff to conceal the fraud.[3]

23.     Plaintiff lacked knowledge of the underlying unlawful and fraudulent acts. Rodriguez Dec. at paragraph 11, 12, 15, 16.

---

[3] Since the individual Defendants aided and abetted Okun within the course and scope of their roles as agents of KPKB and directly benefitted by receiving payments from Okun, their actions are imputed to KPKB.  *See Roessler v. Novak*, 858 So.2d 1158, 1161 (Fla. 2d DCA 2003) ("a principal may be held liable to a third party for acts of its agent which are within the agent's apparent authority").  Per the Eleventh Circuit's opinion in this case, any wrongdoing which Kaplan, Silverman, or Abbott engaged in is imputed to the corporate defendant, KPKB.

## **LEGAL ARGUMENT**

*In pari delicto* is a common law defense governed by Florida law.  *Ekins v. Harbourside Funding, LP*, 14-80479-CIV, 2014 WL 4655756 (S.D. Fla. 2014) *aff'd*, 14-14658, 2015 WL 1898451 (11th Cir. 2015) ("the Florida Supreme Court has recently described the *common law defense* of *in pari delicto* as …") (emphasis added).  *Id*. at *5.

*In pari delicto* has two elements: (1) the parties must "participate in the **same** wrongdoing," and (2) the parties "must be '*[e]qually* at fault."  *Earth Trades, Inc. v. T & G Corp.*, 108 So. 3d 580, 583 (Fla. 2013) (quoting *Black's Law Dictionary* 806 (8th ed. 2004)) (emphasis supplied).  The purpose of *in pari delicto*, which is "both an affirmative defense and an equitable defense," is to prevent plaintiffs from "recovering damages resulting from their own wrongdoing."  *Id.* (quoting *O'Halloran v. PricewaterhouseCoopers LLP*, 969 So. 2d 1039, 1044 (Fla. 2d DCA 2007); *Nisselson v. Lernout*, 469 F.3d 143, 151 (1st Cir. 2006)).

Defendants have failed to explain how their alleged furtherance of a Ponzi scheme was Cordell's "own wrongdoing."  While they assert that Cordell knowingly participated in Okun's "shady business practices," they have not defined what aspect of Okun's business they believe that Cordell knew.  (D.E. 189, pg. 27).   Defendants have not alleged that Cordell was aware of any evidence that Okun's scheme was illegal or fraudulent.  Instead, Defendants have asserted *caveat emptor* coupled with an ostensible argument that a lack of due diligence is itself a form of legal misconduct.  This argument is not supported by precedent.

Each of the defendants was on actual notice that the Okun scheme was criminal in nature. By contrast, Plaintiff had no knowledge of mail fraud, wire fraud, money laundering or civil fraud by Okun.   As the court recognized in *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013), *in peri delicto* only applies where the plaintiff is an "active, voluntary

participant *in the unlawful activity that is the subject of the suit*." *Id*. at 1308. (quoting *Batmean Eichler*, 208 S.Ct. 2063, at 636) (emphasis supplied by the court).  Indeed, "Plaintiffs who are truly *in pari delicto* are those who have themselves violated the law *in cooperation with the defendant.*" *Id.* 1308 (11th Cir. 2013).  Plaintiff's lack of knowledge of the illegal conduct precludes Plaintiff from being liable based upon this suggestion of complicity.

To prove that a plaintiff is *in pari delicto*, a defendant must show that the plaintiff's conduct meets all the legal elements required to be deemed unlawful.  *Kulla v. E.F. Hutton & Co., Inc.*, 426 So. 2d 1055, 1057 (Fla. 3d DCA 1983).  In *Kulla*, an investor received a false 'insider' tip from a broker, incurred losses due to trading on the false tip, and subsequently sued the broker, who responded by claiming that the investor was *in pari delicto*.  *Id*. at 1055.  The court ruled that because the broker was not actually an "insider," and the investor did not receive any information which would render his trade illegal, the investor was not *in pari delicto*.  *Id*. at 1057.  *See also Xaphes v. Shearson, Hayden, Stone, Inc.*, 508 F. Supp. 882, 886 (S.D. Fla. 1981).

Applying the holdings of *Kulla* and *Xaphes*, Cordell was not *in pari delicto* with Defendants because Cordell was unaware that Okun was operating a criminal scheme.  Because Cordell did not possess this knowledge, there is no dispute that Cordell acted lawfully in making the loan.  In contrast, Cordell alleges that Defendants had full knowledge that Okun was violating criminal and civil law; therefore, Defendants acted unlawfully by representing Okun with respect to the loan and by generally supporting Okun's scheme.

In this case, Okun and the defendants knowingly participated in an agreement to close a loan from Cordell in the amount of $7 Million for the express purpose of concealing the earlier defalcation by Okun.  This would serve to conceal the location, ownership and control of the proceeds of that unlawful activity.  See *U.S. v. Martinelli,* 454 F.3d 1300, 1310 (11th Cir. 2006).

However, to charge Plaintiff will being *in pari delicto,* Plaintiff would have to know that Okun had obtained proceeds from unlawful activity.  Plaintiff did not.  Defendants did.

## DEFENDANTS' DEFENSE OF 'ASSUMPTION OF RISK'

24.     Defendants assert the affirmative defense of assumption of risk, in essence arguing that in the manner in which the April 20, 2007 loan was made by Plaintiff the Plaintiff alone assumed all risk of default by the borrower, Okun.

## LEGAL ARGUMENT

Assumption of risk is comprised of two categories: express assumption of risk and implied assumption of risk.  *Blackburn v. Dorta*, 348 So. 2d 287, 290 (Fla. 1977).  Express assumption of risk is a contractual concept that applies when a party: (a) explicitly agrees not to sue the other party, or (b) actually consents to a risk of harm, such as when an athlete engages in a contact sport.  *Id.*   'Express' assumption plainly has no factual basis here.

Before it was abandoned in Florida, implied assumption of risk fell into two categories: primary and secondary.  Primary implied assumption of risk revolved around the claim that a defendant lacked a duty of care, thus it was subsumed into the "duty" element of negligence actions.  *Id.* at 291.  Secondary implied assumption of risk was the contention that a plaintiff's negligence proximately caused his or her injury, and was thus barred from recovering any damages from the defendant.  *Id.*   In this case, based on the Defendant's Answers and Affirmative Defenses, they are relying on secondary, implied assumption of risk.

Florida's Supreme Court has long held that secondary, implied assumption of risk is the equivalent of contributory negligence, which the legislature abandoned in favor of comparative fault.  *Id.* at 292; *see also* Fla. Stat. § 768.81 (codifying Florida's abandonment of contributory negligence).  Courts have long since recognized that implied assumption of risk no longer exists

in Florida.  *Mazzeo v. City of Sebastian*, 550 So. 2d 1113, 1116 (Fla. 1989);  *Mosher v. Speedstar Div. of AMCA Intern., Inc.*, 979 F.2d 823, 826 (11th Cir. 1992) (not followed on other grounds in *Benitez v. Standard Havens Products, Inc.*, 7 F.3d 1561 (11th Cir. 1993)).  Even comparative fault cannot be wielded by a defendant to reduce a plaintiff's recovery for "any action based upon an intentional tort."  Fla. Stat. § 768.81(4).  *See also Slawson v. Fast Food Enterprises*, 671 So. 2d 255, 257 (Fla. 4th DCA 1996).  Cordell's claim is based on an intentional tort.

## THE DEFENSE OF 'INTERVENING CAUSE'

25.     Defendants assert the defense of intervening cause in response to Plaintiff's claims of the intentional torts of Aiding and Abetting Fraud and Conspiracy.  According to the defendants: (i) Okun elected to surrender his interest in the property that was collateral for the April 20, 2007 loan to the Trustee in Bankruptcy; (ii) the decline in market values resulted in the diminution of the value of the collateral.

26.     The collateral for the April 20, 2007 loan consisted of a third mortgage on Okun's residence on Hibiscus island in Miami and an assignment of his membership interests in the IPofA Salina Mall, LLC.  The first lienholder, Wachovia Bank, held a mortgage in the amount of $3 Million and a second mortgage in the amount of $1.8 million for a total of $4.8 Million Dollars.  Wachovia foreclosed on this Hibiscus home and it was sold for $3.4 Million.  The Trustee in bankruptcy did not recover anything as a consequence of Okun's surrender of his interest in the house.  See Rodriguez Dec. at paragraph 31.

27.     IPofA likewise defaulted on mortgage payments owed for the Salina Mall in Kansas.  Following foreclosure, the property sold for $20 Million, far less than the senior mortgages which had priority over both Plaintiff and the Trustee.  See Rodriguez Dec. at 32.

28.     Okun's default in the payment of these mortgages was foreseeable to Defendants: they knew better than anyone except Okun himself that he was insolvent and that his net worth was a complete illusion.  Fluctuations in value in the real estate market are likewise foreseeable.

29.     More important, the acts complained of here reveal that but for the fraud and Defendants' material assistance to it, the loan would never have been made.  Defendants' conduct was the proximate cause of the loan being made.

## LEGAL ARGUMENT

In Florida, intervening cause may be asserted by *negligent* defendants where a "separate force of action" is the "active and efficient intervening cause," the "sole proximate cause," or an "independent cause."   *Gibson v. Avis Rent-A-Car Sys., Inc*., 386 So. 2d 520, 522 (Fla. 1980) (citing  *National Airlines, Inc. v. Edwards*, 336 So.2d 545, 547 (Fla.1976); *Kwoka v. Campbell*, 296 So.2d 629 (Fla. 3d DCA 1974) cert. denied 304 So.2d 450 (Fla.1974); *Atlantic Coast Line R. Co. v. Ponds*, 156 So.2d 781, 784 (Fla. 2d DCA 1963); accord, 349 So.2d 1187 (Fla.1977); *Nicholas v. Miami Burglar Alarm Co*., 339 So.2d 175, 177 (Fla.1976); *Tuz v. Burmeister*, 254 So.2d 569 (Fla. 1st DCA 1971) cert. denied 260 So.2d 514 (Fla.1972)).

Negligent defendants are still liable where their conduct "sets in motion" a chain of events which injure the plaintiff, so that it may be said reasonably said that "but for" that act, the injury would not have occurred.  *Sardell v. Malanio*, 202 So.2d 746, 747 (Fla.1967).  The "but for" test applies where a negligent defendant should reasonably foresee that its negligence could lead to harm, e.g. when a defendant leaves keys in the ignition of an unattended car in a high crime neighborhood, then a thief steals the car and injures the plaintiff.  *Vining v. Avis Rent-A-Car Sys., Inc*., 354 So. 2d 54, 56 (Fla. 1977).

In the aforementioned cases, courts only addressed intentional tortfeasors in their role as "intervening causes," not as defendants who may assert "intervening cause" as their own defense. The factual predicate for Defendants' "intervening cause" more accurately describes comparative fault. As previously mentioned, comparative fault does not apply to "any action based upon an intentional tort." Fla. Stat. § 768.81(4). See also *Slawson v. Fast Food Enterprises*, 671 So. 2d 255, 257 (Fla. 4th DCA 1996).

## THE FAILURE TO MITIGATE DEFENSE

30.     Defendants contend that Plaintiff failed to pursue recovery against Okun for the unpaid April 20, 2007 loan and thus 'failed to mitigate damages'. As a matter of undisputed and/or indisputable fact, Cordell lacked a plausible or practical means of recovery against Okun. Plaintiff's liens related to this loan were junior liens and the collateral was liquidated by the senior lienors without residue. There are no material facts that suggest Cordell could have recovered part or all of its losses with reasonable efforts.

31.     Shortly after the April 20, 2007 loan to Okun, federal authorities raided Okun's offices in Richmond, Virginia. Within days, 1031 Tax Group, LLC was placed into bankruptcy proceedings. Soon after, IPofA followed into bankruptcy court, and soon after that, Okun was indicted for mail fraud, wire fraud and money laundering.

32.     During the bankruptcy case, Cordell attempted to retain the value of its collateral by negotiating inter-creditor agreements. *See* Statement at 29, 30, 31. See Rodriguez Dec. at 29. Unfortunately, Cordell's subordinate positions on Okun's Hibiscus house and the Salina Central Mall prevented significant damage mitigation. See Rodriguez Dec. at 31, 32.

33.     Defendants cannot assert or prove facts that would support a claim that through reasonable effort, Plaintiff could have mitigated its damages. Defendants have not proffered an

expert on the value of any of the Okun properties pledged as collateral or other Okun assets susceptible to levy or execution that would result in the mitigation of damages.

## LEGAL ARGUMENT

Florida's Supreme Court has held that plaintiffs do not have an actual "duty to mitigate," as this misnomer incorrectly summarized the Doctrine of Avoidable Consequences. *Sys. Components Corp. v. Florida Dept. of Transp.*, 14 So. 3d 967, 982 (Fla. 2009). Rather, the doctrine prevents plaintiffs from recovering damages which the plaintiff "could have reasonably avoided." Id. (Emphasis supplied by the Court) (citing The Florida Bar, Florida Civil Practice Damages § 2.43, at 2-30 (6th ed.2005)).

A plaintiff's damages may not be reduced according to what "could have been avoided" through "Herculean efforts." Id. (citing *Thompson v. Fla. Drum Co.*, 651 So.2d 180, 182 (Fla. 1st DCA 1995) ("Extraordinary efforts on the part of a plaintiff to mitigate are not required."), approved, 668 So.2d 192 (Fla.1996)). Rather, damages may only be reduced if they could have been avoided "through 'ordinary and reasonably care'" and "without undue risk, burden, or humiliation." Id. (citing Restatement (Second) of Contracts § 305(1) (1979)).

In the present case, Defendants have not asserted and cannot prove facts indicating that Cordell could have mitigated damages through ordinary, reasonable care and without undue burden. Applying the Court's holding in *Sys. Components*, supra, Cordell had no obligation to engage in an unreasonable and futile effort to recover. Okun's Hibiscus home sold following foreclosure by a senior creditor for an amount that was insufficient to cover its first two mortgages, much less Cordell's third position. See July 17, 2015 Declaration of Rodriguez at 31. Defendants cannot produce any facts to reach the Doctrine of Avoidable Consequences.

## THE DEFENSE OF CAUSATION AND ABANDONMENT OF COLLATERAL

34.     Under the heading, "causation and abandonment of collateral," Defendants claim they may not be held liable because Cordell was a "willing participant" in Okun's business practices and "reaped benefits from them." (D.E. 189, pg. 26). These assertions partially restate the factual grounds for two of their other defenses: intervening cause and failure to mitigate.

35.     Defendants' falsely conclude that "Cordell willingly and quickly settled with the bankruptcy estates, giving up its rights to foreclose on the collateral rather than have its knowledge and participation in Okun's fraud tested." (D.E. 189, pg. 26). Defendants have not asserted and cannot prove any facts that support this conclusion.    In fact, Cordell's Robin Rodriguez made himself available for depositions during Okun's bankruptcy and criminal trial. *See* July 17, 2015 Declaration of Rodriguez at 34.   Plaintiff expended significant sums in prosecuting its claims in the bankruptcy court. *See* Rodriguez Dec. at 35.

36.     Plaintiff concluded it was futile to pursue the collateral pledged buy Okun, given its junior status to senior liens that exceeded the value of the collateral.   The pledged membership interests in IPofA Salina Mall, LLC, were worthless once the property was lost. The real property was the only asset of that LLC.  See Rodriguez Dec. at 32.  The Salina Mall was sold for $20 Million, far less than the Wachovia $33 Million lien.

37.     A thorough search of legal databases reveals no defense of "causation and abandonment of collateral."  It appears to be a non-existent legal defense.

## THE DEFENSE OF LATCHES

38.     The defendants contend that even though Cordell commenced this action within the four year statute of limitations, the delay in notice led the defendants to destroy or dispose of

documents relevant and necessary to the defense.  In addition, Defendants contend that documents under the control of the Plaintiff were lost due to the delay in commencing suit.

39.     This is simply not supported by the facts.  First, the defendants cannot point to a single document lost by them.  In the course of discovery, the defendants initially reported that it had lost its Okun paper files.  Later, it was revealed that the defendants in fact had 71 Banker's Boxes of paper documents.  See July 17, 2015 Declaration of Gilbert.

40.     It is true that the April 20, 2007 loan file in the possession of Ruden McCloskey was sent for destruction after Ruden filed for bankruptcy protection.  However, the entire loan file has been located by the Zobrist Law Group and was timely produced to the Defendants.  See July 17, 2015 Declaration of Gilbert.

## <u>LEGAL ARGUMENT</u>

Laches is a common law affirmative defense which, in Florida, requires that a defendant prove two elements: (1) that the plaintiff unreasonably delayed before filing suit or otherwise enforcing its rights, and (2) that the defendant was unduly prejudiced by this delay. *Edwards v. Edwards*, 730 So. 2d 711, 714 (Fla. 4th DCA 1999).  For a delay to be unduly prejudicial, it must practically "preclude the court from arriving at a safe conclusion as to the matters in controversy." *Id*.  S*ee also Bethea v. Langford*, 45 So. 2d 496, 498 (Fla. 1949);   *Stephenson v. Stephenson*, 52 So. 2d 684, 686 (Fla. 1951);   *Nowell v. Nowell*, 634 So. 2d 235, 237 (Fla. 1st DCA 1994).  Moreover, it is the defendant's burden to prove the elements of laches "by very clear and positive evidence." *Van Meter v. Kelsey*, 91 So. 2d 327, 331 (Fla. 1956).

The Florida Supreme Court's ruling in *The Florida Bar v. Furman*, 451 So. 2d 808, 814 (Fla. 1984) is instructive.  In *Furman*, a defendant argued that she was prejudiced by the Florida Bar's delayed commencement of disciplinary proceedings, as she had deleted relevant files that

she would have preserved had the proceedings been announced earlier.  *Id*.  The bar referee found that the defendant failed to show that any evidence was lost which would have changed the outcome of the proceedings.  On review, the Supreme Court agreed that the defendant had failed to prove, by "very clear and positive evidence," that the Bar's delay was unreasonable or that any evidence lost would have altered the outcome of the case.  *Id*.

It is Defendants' burden to prove by clear and positive evidence that Cordell unreasonably delayed in filing the lawsuit and that the loss of the Ruden documents has jeopardized the jury's ability to arrive at a safe conclusion.  Cordell contends that it filed the present lawsuit as soon as it gathered enough evidence to prosecute the case.  *See* Rodriguez Dec. at 36.  More importantly, all material documents were preserved by Defendants and the Zobrist Law Firm.  Therefore, like the defendant in *Furman*, Defendants in this case were not prejudiced by any loss of evidence.  *See* (loan agreements).  As a matter of law, if Defendants cannot provide "very clear and positive evidence" that documents were lost which could credibly alter the jury's ability to arrive at a conclusion, they may not rely on laches as a defense.

## THE SPOLIATION DEFENSE

41.    Defendants use a claim of spoliation as a defense against Cordell lawsuit based upon Ruden McClosky's loss of its April 20, 2007 loan file.  It is true that Ruden destroyed the file without the involvement of the Plaintiff.   It is also true that the entire file for that loan was produced by Ruden's co-counsel, the Zobrist Law Firm and by Defendants themselves.

## LEGAL ARGUMENT

Under Fed. R. Civ. Pro. 37, a culpable party may be sanctioned for failure to preserve material evidence which causes prejudice to an opposing party.  *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 943 (11th Cir. 2005).  Defendants cannot show prejudice.

Acknowledging that Rule 37 does not specify standards for which sanctions are appropriate, the Eleventh Circuit held that the law of the state in which the action arose should "inform" the court's decision. *Id*. at 944. In a product liability case, *Torres v. Matshushita Electric Corp.,* 762 So.2d 1014 (Fla.5[th] DCA 2000) the 5th DCA sustained a trial court's dismissal of a case based upon the prejudice caused by the plaintiff's failure to preserve the defective vacuum cleaner that allegedly burst into flames. The defendant was unable to discover the age, condition, severity of use and/or abuse of the appliance. However, in the case at bar, the loan file documents were not lost. The defendants had copies as did the Zobrist Law Group.

For cases arising in Florida, the Eleventh Circuit does not permit severe discovery sanctions, e.g. adding adverse inferences to jury instructions, unless the party accused of spoliation acted in bad faith. *See Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) ("'mere negligence' in losing or destroying the records is not enough for an adverse inference …"). *See also Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1310 (11th Cir.2009) ("while this circuit does not require a showing of malice in order to find bad faith, mere negligence in losing or destroying records is not sufficient to draw an adverse inference"). Analyzing the Eleventh Circuit's rulings in *Bashir*, *Flury*, and *Mann*, the Southern District agreed that for a Florida-based action, bad faith is a prerequisite for imposing an adverse jury instruction as to the party accused of spoliation. *Point Blank Solutions, Inc. v. Toyobo Am., Inc.*, 09-61166-CIV, 2011 WL 1456029, at *9 (S.D. Fla. 2011). In the present case, Defendants cannot provide any facts to support the allegation that Cordell acted in bad faith or that they have been prejudiced.

Cordell has acted in good faith and taken all reasonable efforts to preserve documents prior to this lawsuit. *See* July 17, 2015 Rodriguez Dec. at 36. Moreover, all material documents were preserved by the Zobrist Law Firm and Defendants' own database and paper files. As a

matter of law, spoliation is inapplicable because Defendants cannot prove any facts to show that they were prejudiced by a loss of evidence or that Cordell acted in bad faith.

    **WHEREFORE,** Cordell Consultants Inc. Money Purchase Plan, respectfully requests that this Court grant this Motion for Partial Summary Judgment Striking Defendants' Affirmative Defenses, pursuant to Fed. R. Civ. P. 56 (a).

**<u>CERTIFICATE OF SERVICE</u>**

    I HEREBY CERTIFY that on July 17, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically transmitted notices of electronic filings.

GILBERT PA|YARNELL PLLC
11000 Prosperity Farms Road, Suite 205
Palm Beach Gardens, FL 33410
(561) 622-1252 - Telephone
(561) 799-1904 – Facsimile
igilbert@gilbertyarnell.com

By: /s/ Irwin R. Gilbert___
    IRWIN R. GILBERT, ESQ.
    Florida Bar No.: 099473

## Service List

| | |
|---|---|
| Ramon Rasco, Esq.<br>Fla. Bar No.:  0617334<br>rrasco@podhurst.com<br>**Podhurst Orseck, PA.**<br>City National Bank Building, 8th Floor<br>25 West Flagler Street<br>Miami, FL  33130<br>Telephone:  (305) 358-2800<br>Facsimile:  (305) 358-2382<br>***Counsel for Defendant Eliott C. Abbot***<br><br>Howard D. DuBosar, Esq.<br>Fla. Bar No.:  729108<br>dubosarh@dubolaw.com<br>**The DuBosar Law Group, P.A.**<br>Attorneys for Kluger Peretz Kaplan & Berlin, P.L.<br>1800 N. Military Trail, Suite 470<br>Boca Raton, FL  33431<br>Telephone:  (561) 544-8980<br>Facsimile:  (561) 544-8988<br>***Counsel for Defendant, Kluger, Peretz,***<br>***Kaplan & Berlin, P.L.***<br><br>Edward R. Shohat, Esq.<br>JONES WALKER<br>201 South Biscayne Blvd., Suite 2600<br>Miami, Florida 33131<br>Telephone 305.679.5700<br>Facsimile 305.679.5710<br>eshohat@joneswalker.com<br>***Co-counsel for Defendant Steven I. Abbey Kaplan*** | Deborah S. Corbishley, Esq.<br>Fla. Bar No.:  588229<br>dcorbishley@kennynachwalter.com<br>Richard H. Critchlow, Esq.<br>Fla. Bar No.:  155227<br>rcritchlow@kennynachwalter.com<br>**Kenny Nachwalter, P.A**.<br>201 South Biscayne Boulevard<br>Suite 1100<br>Miami, FL  33131<br>Telephone:  (305) 373-1000<br>Facsimile:  (305) 372-1861<br>***Counsel for Defendants Abbey L. Kaplan***<br>***and Steve I. Silverman***<br><br><br>Marilyn G. Kohn, Esq.<br>Fla. Bar No.:  168009<br>mkohn@klugerkaplan.com<br>**Kluger, Kaplan, Silverman,**<br>**Katzen & Levine, P.L.**<br>201 S. Biscayne Blvd., 17th Floor<br>Miami, Florida 33131<br>Phone: (305) 379-9000<br>Facsimile: (305) 379-3428<br>***Counsel for Defendants, Abbey L.***<br>***Kaplan and Steve I. Silverman*** |