UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-CV-80416-RYSKAMP

CORDELL CONSULTANTS, INC.
MONEY PURCHASE PLAN AND
TRUST, a Virginia corporation,
        Plaintiff,
vs.

ELIOT C. ABBOTT, et al.,
        Defendants.
_____/

**PLAINTIFF'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL**
**SUMMARY JUDGMENT MATERIAL BASED ON EXPERT TESTIMONY**

Plaintiff, Cordell Consultants, Inc. Money Purchase Plan and Trust ("Plaintiff"), hereby moves the Court to permit Plaintiff to supplement its summary judgment filings based on testimony from Defendants' expert, Terry Spurlock ("Spurlock"), and Plaintiff's rebuttal expert, Mark Kesselman, ("Kesselman"). In support, Plaintiff states:

1.    Defendants' expert witnesses Spurlock testified about a material and contested issue in this case, the plain falsity of Ed Okun's ("Okun") personal financial statement ("PFS") based upon Okun's failure to disclose the actual nature of his liabilities.[1]

2.    Plaintiffs' expert Kesselman has testified to the reasonableness of the due diligence performed by Plaintiff prior to making the $7 Million loan. Kesselman contradicts the claims of

---

[1] The Okun PFS used to obtain the $7 Million loan from plaintiff lists $134 Million in liability to 1031 Tax Group, LLC for "Notes and Accounts Payable". In actual fact, Okun had stolen the money, not borrowed it. He stole the money from seven different QI companies, such as 1031 Advance, Inc.---not from 1031 Tax Group, LLC. According to records actually reviewed by the defendant lawyers, as of December, 2006, Okun actually had taken more than $150 Million. According to a March, 2007 e-mail from Janet Dashiell, President of the 1031 Tax Group, Inc., Okun had taken more than $162 Million. That e-mail was actually received and reviewed by defendants Kaplan and Abbott.

Spurlock regarding purported red flags and badges of fraud.

3. The Court directed that both parties to this lawsuit may petition to file supplemental summary judgment material as to Kesselman's testimony. Given the timeline of events, Plaintiff also seeks leave to supplement its filings with Spurlock's testimony. Since Plaintiff did not depose Spurlock until after its summary judgment filings, the Court should allow Plaintiff to introduce this newly obtained testimony. Plaintiff deposed Spurlock on August 10, 2015. *See* D.E. 659. Nearly a week earlier, Plaintiff filed its final responses in Opposition to Defendants' Motion for Summary Judgment. *See* D.E. 649.[2]

4. At his deposition, Spurlock testified to the following:

(i) Okun's PFS included a box for "Other Contingent Liabilities" and he was required to list all liabilities here (Spurlock Depo. Tr., p. 39: ln. 5-18; p. 40: ln. 9-21);

(ii) If Okun were liable for fines or penalties, Spurlock would not expect these liabilities to be included under "Notes and Accounts Payable" but would expect them to be listed "elsewhere" on the PFS (Spurlock Depo. Tr., p. 54: ln. 10-23);

(iii) Okun's PFS indicates that he is not the "borrower" of the Qualified Intermediary ("QI") money but is simply a guarantor (Spurlock Depo. Tr., p. 55: ln. 5-11). If Okun were a personal guarantor, this fact would have to be established in writing or "it didn't happen" (Spurlock Depo. Tr., p. 56: ln. 20-25);

(iv) If Okun was in default on the payment of his QI "notes," that would "absolutely" be a material fact in the bank's decision to extend or not extend credit (Spurlock Depo. Tr., p. 57: ln. 2-10);[3]

(v) A borrower's PFS could be a closing document if—while "at the closing table"—a borrower is "asked to certify that there

---

[2] This Motion was filed before the Clerk's business day began on August 4, 2015.
[3] It is undisputed that Okun had defaulted in the repayment of most of the $150 Million in indebtedness to the QI's by December of 2006.

2

      is no change in his financial statement" (Spurlock Depo. Tr., p. 65: ln. 11-19);[4]

(vi) If Spurlock learned that an asset listed on a borrower's PFS was acquired with stolen money, he would not lend to that borrower (Spurlock Depo. Tr., p. 66: ln. 15-21);

(vii) If a borrower were unable to convince its attorney to supply a written opinion letter, Spurlock would not lend to that borrower unless "very strong reasons" were given for this failure (Spurlock Depo. Tr., p. 70: ln. 1-4);

(i) A borrower is "required to disclose all liabilities, direct and contingent" (Spurlock Depo. Tr., p. 85: ln. 4-6);

(ii) If a borrower is unable to determine its true level of debt—having produced various statements that contradict one another—this would be a "huge red flag" (Spurlock Depo. Tr., p. 85: ln. 7-13);

5. Spurlock's testimony about the falsity of Okun's PFS goes to the very heart of Defendants' Motion for Summary Judgment [D.E. 592], which Plaintiff opposes. Defendants make the argument that Okun's financial statement was not fraudulent. Spurlock's testimony, not available at the time of plaintiff's response to the summary judgment motion, makes it clear that the Okun PFS was fraudulent.

6. Kesselman's testimony is also material to Defendants' affirmative defenses of *in pari delicto*, unclean hands, and intervening cause, which Plaintiff has sought to exclude on summary judgment. *See* D.E. 189; D.E. 603. Plaintiff contends that Defendants were aware of falsities in Okun's financial statement that Plaintiff was unaware of. Kesselman establishes that the Okun PFS does not reveal that Okun is 'borrowing' from any Q.I. company, but has instead become indebted to a holding company called 1031 Tax Group, LLC and that there is no per se prohibition against a Q.I. investing funds it holds.

---

[4] Plaintiff testified that the attorney for Okun from the defendant law firm represented to Plaintiff that there had been no adverse material change in Okun's financial condition.

7. Kesselman rebuts defendant's contentions regarding Okun's purported defaults in the payment of other loans from Plaintiff. He establishes why there either was no default or why Okun's late payments on other loans were immaterial. Kesselman establishes that lenders do not investigate the legality of the borrower's business transactions and that Plaintiff's due diligence in making the subject loan was appropriate in the circumstances.

8. Plaintiff did not have the benefit of either Spurlock or Kesselman's relevant and material testimony before its summary judgment filings. Therefore, Plaintiff respectfully requests that the Court grant Plaintiff leave to file a single supplemental motion in support of its Motion for Partial Summary Judgment and in opposition to Defendants' Motion for Summary Judgment.

9. Plaintiff request leave to file the deposition testimony of both Spurlock and Kesselman together with a brief analysis of their testimony and its significance to summary judgment issues.

## CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that counsel for the movant has attempted in good faith to confer with all parties who may be affected by the relief sought in this motion to resolve the issues raised. Responding, Edward Shohat, the attorney for Steven Silverman, stated that he opposed the motion. Counsel for the remaining defendants did not respond.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 6, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically transmitted notices of electronic filings.

/s/___Jimmy W. Mintz
Irwin R. Gilbert   (Fla. Bar #099473)
Jimmy W. Mintz  (Fla. Bar #113363)
Kelley Kronenberg
Attorneys for Plaintiff
1475 Centrepark Blvd. Ste. 275
West Palm Beach, FL 33401

                                          Tel. 561.684.5956
                                          Fax. 561.684.5753
                                          igilbert@kelleykronenberg.com
                                          jmintz@kelleykronenberg.com

## Service List

| | |
|---|---|
| Steven C. Marks, Esq.<br>Fla. Bar No.: 516414<br>smarks@podhurst.com<br>Ramon Rasco, Esq.<br>Fla. Bar No.: 0617334<br>rrasco@podhurst.com<br>**Podhurst Orseck, PA.**<br>City National Bank Building, 8th Floor<br>25 West Flagler Street<br>Miami, FL 33130<br>Telephone: (305) 358-2800<br>Facsimile: (305) 358-2382<br>***Counsel for Defendant Eliott C. Abbot***<br><br>Howard D. DuBosar, Esq.<br>Fla. Bar No.: 729108<br>dubosarh@dubolaw.com<br>**The DuBosar Law Group, P.A.**<br>Attorneys for Kluger Peretz Kaplan & Berlin, P.L.<br>1800 N. Military Trail, Suite 470<br>Boca Raton, FL 33431<br>Telephone: (561) 544-8980<br>Facsimile: (561) 544-8988<br>***Counsel for Defendant, Kluger, Peretz, Kaplan & Berlin, P.L.*** | Deborah S. Corbishley, Esq.<br>Fla. Bar No.: 588229<br>dcorbishley@kennynachwalter.com<br>Richard H. Critchlow, Esq.<br>Fla. Bar No.: 155227<br>rcritchlow@kennynachwalter.com<br>**Kenny Nachwalter, P.A**.<br>201 South Biscayne Boulevard<br>Suite 1100<br>Miami, FL 33131<br>Telephone: (305) 373-1000<br>Facsimile: (305) 372-1861<br>***Counsel for Defendants Abbey L. Kaplan and Steve I. Silverman***<br><br>Marilyn G. Kohn, Esq.<br>Fla. Bar No.: 168009<br>mkohn@klugerkaplan.com<br>**Kluger, Kaplan, Silverman, Katzen & Levine, P.L.**<br>201 S. Biscayne Blvd., 17th Floor<br>Miami, Florida 33131<br>Phone: (305) 379-9000<br>Facsimile: (305) 379-3428<br>***Counsel for Defendants, Abbey L. Kaplan and Steve I. Silverman***<br><br>Edward R. Shohat, Esq.<br>Fla. Bar No.: 152634<br>eshohat@joneswalker.com<br>**Jones Walker**<br>201 S. Biscayne Blvd<br>Twenty Sixth Floor<br>Miami, Florida 33131<br>Telephone: (305) 679-5700<br>Facsimile: (305) 679-5710<br>***Co-counsel for Defendant Steve I. Silverman*** |