# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80416-CIV-RYSKAMP/HOPKINS

CORDELL CONSULTANTS, INC.
MONEY PURCHASE PLAN,
a Virginia corporation,

      Plaintiff,

v.

ELIOT C. ABBOTT, an individual;
DALE S. BERGMAN, an individual;
ABBEY L. KAPLAN, an individual;
STEVEN I. SILVERMAN, an individual;
and KLUGER, PERETZ, KAPLAN
& BERLIN, P.L., a Florida Professional
Limited Liability Company,

      Defendants.

_____/

## **FINAL JUDGMENT**

THE COURT, having granted Defendants Eliot Abbott, Abbey Kaplan and Steven

Silverman's motion for summary judgment, hereby

ORDERS AND ADJUDGES that FINAL JUDGMENT IS HEREBY ENTERED in favor

of Defendants Eliot Abbott, Abbey Kaplan, Steven Silverman and Kluger, Peretz, Kaplan &

Berlin, P.L. and against Plaintiff Cordell Consultants, Inc. Money Purchase Plan.  This matter is

hereby REMOVED from the November 16, 2015 trial calendar.  The Clerk of Court shall

CLOSE this case.  All pending motions *except for the October 30, 2015 **[DE 763]** report and*

*recommendation* are DENIED as MOOT.[1]

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 9th day of

November, 2015.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

---

[1] Kaplan and Silverman moved for Rule 11 sanctions against Cordell on August 2, 2012. This matter went up on appeal prior to completion of briefing of the Rule 11 motion. Kaplan and Silverman also filed a motion for attorneys' fees and costs pursuant to 28 U.S.C. § 1927 on June 14, 2013, which was also subsequent to the filing of the appeal in this matter. The Court did not rule on these motions due to the pendency of the appeal. The Court presumes that if Kaplan and Silverman wish to pursue these motions, they will file updated motions. Accordingly, the Court is denying these motions as moot. The Court expresses no opinion as to whether it believes Kaplan and Silverman will file new motions and expresses no opinion on the merits of any such future motions.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80416-CIV-RYSKAMP/HOPKINS

CORDELL CONSULTANTS, INC.
MONEY PURCHASE PLAN,
a Virginia corporation,

      Plaintiff,

v.

ELIOT C. ABBOTT, an individual;
DALE S. BERGMAN, an individual;
ABBEY L. KAPLAN, an individual;
STEVEN I. SILVERMAN, an individual;
and KLUGER, PERETZ, KAPLAN
& BERLIN, P.L., a Florida Professional
Limited Liability Company,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court pursuant to Defendants Abbey Kaplan ("Kaplan") and Steve Silverman's ("Silverman") motion for summary judgment, filed July 17, 2015 **[DE 592]**. Plaintiff Cordell Consultants, Inc. Money Purchase Plan ("Cordell") responded on August 4, 2015 **[DE 649]**. Silverman and Kaplan filed replies on August 13, 2015 **[DE 666, 669]**. Defendant Eliot Abbott filed an amended notice of joinder on November 4, 2015 **[DE 775]** wherein he joined Kaplan and Silverman's summary judgment motion to the extent the motion is applicable to him. Counsel for Kluger, Peretz, Kaplan & Berlin, P.L. ("KPKB") adopted at the November 3, 2015 summary judgment hearing the arguments of counsel for Abbott, Kaplan and Silverman. This motion is ripe for adjudication.

## I.     **BACKGROUND**

Edward Okun ("Okun") was a real estate businessman engaged in several lines of business, including investment in commercial and retail property through Investment Properties of America ("IPA"). He owned several qualified intermediaries that facilitated Section 1031 Exchanges. *See* 26 U.S.C. § 1031. 1031 Exhanges involve selling property and replacing that property with other property. When a delay is present between the two transactions, the funds from the first sale are held by a Qualified Intermediary ("QI") company, that is, out of control of the taxpayer, for the gain to be deferred for tax purposes. QIs receive funds, invest them, and then repay the funds to the customer once the customer closes on the second transaction. The maximum amount of time allowed between transactions is 180 days.

Okun used Cordell as a lender prior to April 2007. Either Cordell or a related entity made four prior loans to Okun or to his related entities. (Kaplan and Silverman's Statement of Facts, 53, n.1.) The first loan was made before KPKB began representing Okun. The second and third loans were in progress before KPKB began representing Okun but closed while KPKB was representing Okun. The fourth loan involved property in Louisiana. KPKB describes its role in that loan as "minor" and notes that Okun also used Louisiana counsel for that loan. *Id.* None of these loans are at issue in this action.

In the fall of 2006, the president of Okun's QI businesses, Todd Pajonas ("Pajonas"), told Okun's new CFO, David Field ("Field"), who then told IPA in house counsel, Eric Perkins ("Perkins"), that Okun had used QI money to pay for non-QI acquisitions and expenses. *Id.* at

12.[1]  Perkins told Okun on November 7, 2006 that his financial statements did not reflect his

liability to the QIs, that the financial statements were misleading and that they must be corrected.

*Id.* at 14.  Newly consulted outside counsel McGuire Woods said the same and later declined to

continue representing Okun.  *Id.* at 13.  Perkins advised that the correction needed to be shared

with creditors who received prior financial statements.  *Id.* at 15.  Field revised the statements to

show $134 million in debt to the QIs.  *Id.* at 16.

In November 2006, Okun terminated Pajonas.  Okun's employment relationship with his

in house lawyers also ended.  *Id.* at 64.[2]  Okun contacted Richard Simring ("Simring"), then an

attorney with Jordan Burt.  *Id.* at 65.  Simring recommended KPKB as outside counsel and called

Kaplan on or around November 22, 2006.  *Id.* at 65.  Kaplan was about to start trial in another

matter and requested that Silverman and Abbott meet with Simring to learn about Okun's legal

representation needs.  Silverman and Abbott met with Simring and eventually Okun between

November 27 and 29, 2006.  KPKB accepted representation of Okun.  *Id.* at 66.  Silverman,

Kaplan and Abbott received copies of the in house counsel memos wherein Okun was advised of

the improper use of QI funds and the need to rectify same.  *Id.* at 67.  On December 1, 2006,

Silverman, Kaplan and Abbott received Okun's financial statement that disclosed $134 million in

QI liability.  *Id.* at 68.  Cordell received the same statement the prior week, on November 27,

2006.  *Id.* at 5.

In mid-December, research performed by KPKB associates confirmed that Okun could

---

[1] Pajonas testified at deposition that Okun had stolen from the QIs, but Pajonas did not testify that he told Field that the money was stolen.  (DE 382-1, 121.)

[2] Defendants claim that Okun terminated the in house lawyers.  Cordell claims that Perkins resigned on ethical grounds.  In any event, the material point is that Okun wanted new legal representation.

not use QI funds for non-QI purposes. *Id.* at 69. Silverman, Kaplan and Abbott met with Okun

and Simring and Silverman and Kaplan told Okun that Okun could not use QI money for non-

QI purposes and that Okun needed to repay the funds he had taken. *Id.* Abbott recommended a

criminal lawyer to advise Okun. Michael Rosen ("Rosen"), a criminal lawyer, attended meetings

with Okun and in Abbott's presence told Okun not to take the funds while Rosen studied the

issues. Okun indicated that he did not know how he would repay the QIs. *Id.* at 70. This

statement does not indicate that Okun did not intend to repay the QIs, only that he did not know

how he would go about doing so. Okun disputed the amount he owed to the QIs and claimed that

Pajonas, the president of the QIs, had failed to keep the records up to date, had taken money

personally and had hidden bank accounts with QI money. *Id.* at 71. As a result, KPKB, through

Silverman, retained Penta Advisory Services ("Penta"), an accounting and financial company, to

review transactions and records, determine the precise Okun debt to the QIs, and to reconstruct,

as necessary, the financial records of the QI companies. *Id.* at 72. Kaplan and Silverman

understood that Okun intended to use Penta's results to ensure that QI customers were repaid in

full and that Okun intended to refinance his properties or obtain an equity infusion to make

complete payment. *Id.*

     In December 2006 and February 2007, the KPKB transactional dept closed loans between

Cordell or related entities and Okun and his companies. *Id.* at 119. The transactional department

also negotiated the documents to close Okun's acquisition of another QI company, 1031

Advance, Inc., which Okun bought in late December 2006 with funds borrowed from Cordell.

*Id.* at 122.

     Penta had yet to finish its work as of late March 2007. On March 30, 2007, Kaplan and

Abbott received from Simring a copy of a March 29, 2007 email from Janet Dashiell

("Dashiell"), the new QI president. *Id.* at 73. Dashiell was concerned that Okun had not

completed repayment to the QIs and advised Okun and Simring that Okun had a total liability of

175 million but only 2.3 million in "flexible cash." *Id.* at 20. To the extent that Dashiell's email

might have suggested to Kaplan that Okun was taking QI money, Kaplan was then advised that

Okun had actually been paying the QIs' liabilities instead. *Id.* at 74. Abbott advised Kaplan on

March 30 that Okun's staff located missing bank accounts and expected to find 60 million. *Id.*

Silverman never received the Dashiell email. Penta finished its work in April of 2007 and

tentatively concluded that the QIs needed to be repaid $114 million. *Id.* at 22.[3]

In mid-April 2007, Okun met with potential lenders, including Cordell, to refinance debt

to the QIs as well as debt on his properties. Cordell knew that Okun sought a $200-250 million

loan to, in part, refinance the QI debt. *Id.* at 45. Cordell was aware that Okun made a $5 million

down payment on a $100 million warehouse and that he needed a loan to make the rest of the

payments on the warehouse. *Id.* at 46-47. KPKB did not refer Okun to Cordell. *Id.* at 108-09.

The documents Cordell cites for the proposition that KPKB recommended Cordell do not

indicate that KPKB made such a recommendation. At that time, Cordell was aware that Okun

was late in making a payment on a Cordell loan. *Id.* at 44. On April 17, 2007, Randy Kominsky

("Kominsky"), an Okun advisor, approached Robin Rodriguez ("Rodriguez"), Cordell's

principal, and asked him to make an emergency loan to Okun because Okun had a problem with

the QIs. *Id.* at 32. Specifically, Rodriguez testified that Kominsky told him that Okun

---

[3] Cordell claims that Penta concluded that Okun's debt to the QIs was $112.7 million in December 2005 but
that Penta revised its estimate to $114 million for 2006. The financial statement shows $134 million in debt to the
QIs, however, so whether Penta revised its figure from $112.7 to $114 million is immaterial.

> said he had a cash flow problem. And until -- He had planned on
> this exchange being done closer to the six-month mark, and the
> investor came in much earlier on the other side of the transaction.
> And so he was going to cover the problem personally, and then get
> the money when the assets were sold, and repay the loan.

*Id.* at 32. Cordell lent Okun $7 million, and the loan closed in four days later on April 20, 2007.

Kaplan and Silverman's respective roles in the loan were minimal, to the extent any such role existed at all. KPKB issued an opinion letter regarding the loan. *Id.* at 57. Cordell claims that at closing it received only the first two pages of the financial statement and that these pages did not include schedule H, which provided for the $134 million debt to the QIs. The first two pages of the financial statement reference Schedule H and included the same total liability as did the November 27, 2006 statement. *Id.* at 6. KPKB transactional and corporate lawyers negotiated the loan documents. Silverman was unaware that KPKB was representing Okun in connection with a loan. *Id.* at 112. Kaplan received a conflict check on the loan. *Id.* at 114. Neither Kaplan nor Silverman spoke with Okun, his staff or Rodriguez re the loan, and neither attended the closing. *Id.* at 115-16.

Okun defaulted on the loan in May of 2007. *Id.* at 2. The QIs filed for bankruptcy protection, and Okun ended his active engagement with them. Okun was convicted of fraud against the QI customers and was found to have used QI money that was not repaid in the amount of $128,892,575.97. *See United States v. Okun*, Cr. No. 3:08CR132 (E.D. Va.) (July 26, 2009). *Id.* at 23.

Cordell claims that the KPKB, Abbott, Kaplan and Silverman aided and abetted Okun's fraudulent scheme to induce it to make a $7 million loan based on misrepresentations. The

elements of this claim under Florida law are: 1) the existence of an underlying fraud; 2) the

defendants' knowledge of the fraud; and 3) the defendants' provision of substantial assistance to

advance the commission of the fraud. *ZP No. 54 Ltd. P'ship v. Fid. & Dep. Co. of Md.*, 917

So.2d 368, 372 (Fla. 5th DCA 2005). Cordell also claims that Defendants conspired to help

Okun defraud it in connection with the loan. The elements of a claim for civil conspiracy under

Florida law are as follows: "(a) an agreement between two or more parties, (b) to do an unlawful

act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the

conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." *Raimi*

*v. Furlong,* 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). The Court on December 5, 2012 granted

Defendants' Rule 12(b)(6) motion and dismissed the second amended complaint with prejudice.

The Eleventh Circuit reversed and remanded. Defendants now move for summary judgment on

each of Cordell's claims.

## II.    LEGAL STANDARD

Summary judgment is warranted where the party bearing the burden of proof fails to

prove an essential element of its case or fails to identify specific facts showing that there is a

genuine issue for trial. *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997); *see*

*also Merget v. Moss*, 246 Fed.Appx. 664, 666 (11th Cir. 2007). The movant bears "the initial

responsibility of informing [the court] of the basis for its motion, and identifying those portions

of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has done so, "a plaintiff

cannot rely on its allegations; it must provide evidence to support those allegations." *Inlet Condo. Ass'n, Inc. v. Childress Duffy, Ltd., Inc.*, No. 13-14064, 2015 WL 3798474, at *10 (11th Cir. June 19, 2015) (citing *Doe v. Drummond Co.*, 782 F.3d 576, 604 (11th Cir.2015) ("Plaintiffs could not rely upon mere allegations to survive summary judgment, but were required to either point out evidence in the record or provide additional evidence in support of their claims sufficient to withstand a directed verdict motion."). "[T]o survive summary judgment, the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015) (citing *Brooks v. Cnty. Comm'n*, 446 F.3d 1160, 1162 (11th Cir. 2006)). "Summary judgment must be granted if the nonmoving party has failed to make a sufficient showing on 'an essential element of her case with respect to which she has the burden of proof.'" *Annunziata v. School Board*, No. 04-12560, 2005 WL 591205, at *4 (11th Cir. Mar. 4, 2005) (quoting *Celotex*, 477 U.S. at 323).

Prior to commencing its analysis of Cordell's claims, the Court also deems it necessary to set forth the legal standards as to what evidentiary inferences are sufficient to create triable issues of fact. To create an issue for trial, an inference must rest on actual evidence and be a reasonable conclusion from that actual evidence. An inference cannot be build upon another inference, nor can it be built upon speculation. If positive testimony to the contrary exists, an inference cannot be a basis for argument or for fact finding. *See Clover v. Total System Servs.*, 176 F.3d 1346, 1354-55 (11th Cir. 1999)( "could have told" is not the same as "did tell;" that two people "talk regularly...is not enough to support a reasonable inference that they discussed a specific topic, much less an inference concerning what they said about it."); *Burrell v. Board of Trustees of GA*

9

*Military College*, 970 F.2d 785, 791 n.15 (11th Cir. 1992) ("Any conclusion about the content of their discussion in contradiction to their testimony would qualify as speculation..., not inference. In sum, the naked fact of...meeting, considered independently or in conjunction with all other inferable facts in the record, does not permit the inference that [they] conspired...."); *Lee v. Celotex Corp.*, 764 F.2d 1489, 1490-91 (11th Cir. 1985) ("speculation and conjecture that renders them mere guesses or possibilities" does not defeat summary judgment); *Gadsby v. Am. Golf Corp. of California*, 557 Fed.Appx. 837, 839-40 (11th Cir. 2014) ("We have said repeatedly that speculation about a fact or result is insufficient to survive summary judgment.  An inference based on speculation and conjecture is not reasonable.") (quotation omitted); *Carlson v. United States*, 754 F.3d 1223, 1230 (11th Cir. 2014) ("The problem is [not the use of circumstantial evidence but] that this circumstantial evidence says nothing about what Carlson actually knew. Any conclusion that Carlson actually knew the return understated tax is not made based on this evidence, but rather is made from pure speculation.").

## III.     DISCUSSION

### A.     Cordell was not defrauded.

#### 1.     Financial Statement not Fraudulent

Cordell must demonstrate that it was the victim of fraud in connection with the making of the April 2007 loan to prevail on either of its claims.  "In order to recover for fraud in the inducement, the plaintiff must prove by the greater weight of the evidence that: 1) a false statement was made regarding a material fact; 2) the individual who made the statement knew or should have known that it was false; 3) the maker intended that the other party rely on the

10

statement; and 4) the other party relied on the false statement to its detriment." *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 542 (Fla. 5th DCA 2003) (citations omitted).

The financial statement indicates that Okun owed $134 million to the QIs. Cordell received the full statement on November 27, 2006 and received the first two pages of the statement at the April 20, 2007 closing.[4] Defendants did not generate the statement; the $134 million number came from Fields, Okun's CFO. Okun, Defendants and Cordell all relied on this number. While Dashiell's March 30, 2007 email refers to $175 million in liability against $2.3 million in flexible cash, there is no proof of what funds were held in segregated accounts and no proof that such was an accurate representation of the amounts due as of March 30. Although Penta arrived at an obligation of $160 million, Penta also concluded that the hole - or gap in assets available to meet it - was $114 million. Indeed, the amount due from Okun to the QIs as of mid-2007 is the schedule to the United States' filings in the Okun criminal case. That amount totaled roughly $128 million. Cordell has not offered any competent evidence that Okun owed more than $134 million on November 27, 2006 or on April 20, 2007, the dates when the financial statement was provided to it.

### 2. Failure to Disclose Legal Consequences of Known Facts is not Fraudulent

Cordell also claims that it was defrauded because no one disclosed 1) that Okun's transfers from the 1031 Tax Group constituted a crime or fraud; and 2) that Okun did not own the

---

[4] The document Cordell received at closing consisted of the first two pages of the financial statement. The first two pages of the statement reference Schedule H and include the same total liability as did not November 27, 2006 statement. (Response, p. 7.)

11

property listed on his financial statement because he had stolen the funds to purchase the

properties.  Each of these claims is fundamentally an allegation that Cordell was defrauded

because it did not know the legal consequences of certain facts.

Cordell was not defrauded by Okun or KPKB's failure to tell it that Okun's conduct in

borrowing from the QIs was illegal and fraudulent.  Neither Okun nor anyone else told Cordell

anything about the legal consequences of these transfers because 1) Cordell never asked; and 2)

Cordell had its own highly competent lawyers in connection with the loans and apparently never

asked them for advice on the subject.  It is axiomatic that "every person is presumed to know

what the law forbids."  *United States v. Paradies*, 98 F.3d 1266, 1285 (11th Cir. 1996) (quotation

omitted).  Cordell's claim that it was defrauded because it was not told that Okun's conduct was

illegal is similar to *L & L Doc's, L.L.C. v. Florida Div. of Alcoholic Beverages & Tobacco*, 882

So. 2d 512, 515-16 (Fla. 4th DCA 2004), in which the court affirmed summary judgment against

a buyer of a slot machine business who alleged that he believed the slot machine business was

legal because it was open and discussed and because no one told him it was illegal:

> [D]uring the negotiations for the sale of the business. . . [Buyer]
> asserted that . . . he was unaware that gambling is illegal in the
> state of Florida .... [Seller] signed a Business Owner's No Lien
> Affidavit . . . in which he affirmatively represented to the buyers
> that he knew 'of no violations of municipal, county or state laws
> and ordinances pertaining to the above-described property, or in
> the use and occupancy thereof, or in the leased premises' and had
> 'complied with all laws, rules and regulations imposed by
> government or otherwise relating to the assets transferred to
> Buyer....'
> * * * *
>
> Without admitting that there was a misrepresentation, seller argues
> that, in any event, the buyers were not justified in relying upon a

> misrepresentation which they knew or should have known, with the exercise of some diligence, was false. We agree. Buyers' ignorance of the law is not excused simply because they are not from this country. *See generally State v. Beasley,* 580 So.2d 139, 142 (Fla.1991) ("As to notice, publication in the Laws of Florida or the Florida Statutes gives all citizens constructive notice of the consequences of their actions"); *see also Davis v. Strople*, 158 Fla. 614, 29 So.2d 364 (1947) (ignorance of the law is no excuse).

*L & L Doc's, L.L.C. v. Florida Div. of Alcoholic Beverages & Tobacco*, 882 So.2d 512, 515-16 (Fla. 4th DCA 2004). Cordell has not asserted that anyone told it that Okun's use of QI funds for his own purposes was legal.

Cordell also claims that the fact that the obligation was listed under notes and accounts payable and not described as stolen money was a misrepresentation. The question of the characterization of the debt is a legal argument and is not the basis for a fraud claim. Furthermore, the financial form, which Defendants did not prepare, does not provide for characterization of the amounts as "stolen." Okun retained a CPA to prepare the statement, and all persons involved in this action relied on it.

As to potential claims against the assets listed in the statement, no one had made such claims at the time of closing. The potential for future claims against the assets was not raised until May 20, 2007, one month after closing. Cordell asserts that QI liability could be trebled under civil theft statutes, but no one on Okun's staff or at KPKB had recognized the potential for trebling, and no QI customer had been harmed at that point. Non-disclosure of the legal consequences of known facts is not fraud.

### 3.      No False Statements in Opinion Letter or Borrower's Affidavit

Cordell has also asserted that the KPKB opinion letter and the borrower's affidavit signed

by Okun were false.  Cordell has failed to identify a single false statement in those documents,

however.  What it seems to rely on is an omission -- the failure to make any statements about

Okun's QI businesses.  The opinion letter and borrower's affidavit only make representations

about Okun's ability to sign the documents and the lack of pending or threatened claims against

him or the collateral for the loan.  Neither the opinion letter nor the borrower's affidavit can form

the basis for a fraud claim.

### 4.    Cordell was aware of the material facts.

To the extent that Cordell claims that there were misrepresentations or, more correctly,

omissions about legal matters such as ownership of or claims with regard to the assets in the loan

documents, these theories, even if true, cannot support a fraud claim.  Cordell knew that Okun

owned several QI companies and owed them $134 million.  At the time it made the loan, Cordell

knew that Okun could not pay one or more of the QI customers and that Okun was overdue on a

separate $192,000 loan payment due to Cordell.  Cordell was fully aware that Okun was looking

for a $200-250 million loan.  Cordell never sought a cash flow projection for Okun's needs,

either short or long term.  Cordell knew that the financial statement it relied on was originally

sent in November 2006.  Cordell knew via Kominsky that Okun had a cash flow problem.

Cordell loaned Okun $7 million dollars not knowing if he would need another $7 million dollars

or $15 million dollars the next day, the next week or whenever or if or how he would pay

Cordell, the QI customers, or other creditors.  The loan carried an 18% interest rate, the highest

interest rate a loan may carry without being usurious under Florida law.  Fl. Stat. § 687.03

(setting 18% as Florida's usury rate).

14

Neither Okun nor KPKB were obligated to inform Cordell that Okun had engaged in illegal or unlawful activity because "[a] defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose." *See TransPetrol, Ltd. v. Redulovic*, 764 So.2d 878, 879 (Fla. 4th DCA 2000) (citing *Don Slack Ins., Inc. v. Fidelity & Cas. Co. of N.Y.*, 385 So.2d 1061 (Fla. 5th DCA 1980)). "[S]uch duty arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them." *Id.* (quoting *State v. Mark Marks, P.A.*, 654 So.2d 1184, 1189 (Fla. 4th DCA 1995), *approved by,* 698 So.2d 533 (Fla.1997)). There is no confidential, contractual, or fiduciary relationship between Cordell and the Defendants.

Each of Cordell's legal theories require proof that Cordell was defrauded into making the loan. Cordell has failed to present any evidence indicating that it was defrauded with regard to the April 2007 loan, however. Therefore, both the aiding and abetting claim and the conspiracy claim fail as a matter of law. On this basis alone, even without addressing the remaining elements of the claims or the claims as to any individual Defendant, summary judgment for each Defendant is appropriate.

**2. Silverman and Kaplan did not know of any intent to obtain loans by fraud.**

It is undisputed that both Silverman and Kaplan knew that Okun had taken money from the QIs prior to November 2006 and that such was likely a civil wrong. Cordell has not adduced any competent proof that Kaplan or Silverman knew that Okun intended to obtain loans by use of false financial statements, however. Indeed, by the time Defendants were retained, Okun had prepared corrected financial statements as he had been advised to do by prior lawyers. Cordell has also failed to produce any evidence that Silverman or Kaplan knew that loans were being

15

sought to prevent the scheme from collapsing. Kaplan and Silverman told Okun that Okun must

cease using QI funds for non-QI purposes. Kaplan and Silverman were informed he would stop.

They were entitled under the law to believe their client. *In re Cascade Intn'l Secs.*, 840 F.Supp.

1558, 1564-65 (S.D. Fla. 1993) ("The Court will not go so far as to require law firms to fully

investigate their clients at any hint that they may be conducting fraudulent activities, and then to

punish the law firms if they do not do so. Otherwise, the law firms would be charged with a duty

to the public at large to 'tattle' on their clients.").

To the extent that there was any awareness of fraud against QI customers, knowledge of

the fraud against the QI customers is not enough to establish liability to Cordell. *Kirschner v.

Bennett*, 648 F.Supp.2d 525, 544 (S.D.N.Y. 2009) (holding that facts must demonstrate that the

defendants had actual knowledge of wrongful conduct that harmed the specific customers, not

actual knowledge of different wrongful conduct that might have harmed others. Arguments of "a

strong inference that [the defendants were] aware of the magnitude of the RGHI [r]eceivable[s]"

or that "Refco lacked the financial health it presented to the outside world," are insufficient to

support aiding and abetting claims against *these* defendants in *this* action."). Cordell's claims

fail because there is no basis in this record for a finding that Kaplan or Silverman knew that

Okun intended to obtain a loan through fraud or that they agreed with him that he should do so.

### 3. Silverman and Kaplan provided no assistance in the alleged fraud.

Even if Cordell could prove that there was a fraud by Okun in connection with the loan or

that Cordell was a victim of the QI fraud, Cordell's claims fail because Cordell cannot point to a

single act by either Silverman or Kaplan that substantially assisted or was overtly in furtherance

of Okun's fraud.

Cordell alleges that Silverman and Kaplan were told by Okun that he intended to obtain loans by use of false financial statements or to obtain another QI and strip it of cash. Okun's CFO revised the financial statement to meet the concerns raised and Okun told Silverman in Kaplan's presence that he understood and would comply with the advice not to use any QI funds for non-QI purposes. Again, the lawyers were legally entitled to believe their client. Neither Kaplan nor Silverman attended the closing. No Defendant prepared the financial statement; indeed, all individuals involved in this action relied on the statement prepared by Okun's accountant.

Cordell repeatedly argues that KPKB was required to withdraw if Okun did not disclose his wrongdoing to QI customers. Rules 4-1.16(a)(4) and (5) of the Florida Rules of Professional Conduct only require withdrawal under these circumstances if the lawyer's services were used to commit the crime or fraud, however. Because KPKB was newly retained, it could go forward without requiring Okun to make disclosure of misconduct that occurred earlier and without KPKB's involvement.

Even if, as Cordell maintains, Kaplan advised Okun to obtain the loan from Cordell, Kaplan believed Okun when Okun said that Okun would not take any more QI money and would repay same. Kaplan was entitled under the law to do so. As Kaplan was unaware of fraud in connection with the loan, he had no reason to intervene. Even if there were fraud, mere knowledge absent cooperation "is not enough to constitute one a party to a conspiracy." *United*

*States v. Mendez*, 496 F.2d 128, 130 (5th Cir. 1974).[5] "In order to fasten guilt on one accused of being a co-conspirator it is necessary to prove that he actively participated in the conspiracy charged." *Id.*

Cordell argues that the lawyers had a duty to disclose Okun's wrongdoing if they had a "high conscious intent" to commit fraud. "When no duty of disclosure is alleged, an alleged aider-abettor may be found liable only if scienter of the high 'conscious intent' variety can be shown." *Lancer Offshore, Inc. v. Citco Grp*., No. 05-60080-Civ, 2008 WL 926513, at *6 (S.D. Fla. Mar. 31, 2008). Kaplan had no duty to Cordell because Kaplan made no statements whatsoever to Cordell and did not know what statements were made.

Cordell's reliance on Dale Bergman's ("Bergman") belief that Bergman was kept in the dark is a red herring. Bergman's belief that he was kept in the dark neither makes it true nor supports a claim that Kaplan assisted in or conspired to defraud Cordell. Cordell's claim that Howard Berlin's ("Berlin") request for information in May 2007 demonstrates that he was kept in the dark as well is also a red herring. Berlin made his inquiry after the loan closed.

Silverman's links to the April 2007 loan are even more tenuous. Cordell alleges that it was Kaplan, not Silverman, who advised Okun to obtain the loan from Cordell. Cordell does not point to any record evidence that indicates that Silverman worked on the loan in question. Any work that Silverman performed on a previous Cordell loan is not at issue here. Merely meeting with Abbott or Kaplan to discuss Okun matters does not lead to an inference that Silverman

---

[5] Decisions of the United States Court of Appeals for the Fifth Circuit issued prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard, Ala*., 661 F.2d 1206, 1207 (11th Cir. 1981)

18

defrauded Cordell with respect to the April 2007 loan.  A jury may not reasonably infer that Abbott or Kaplan discussed the Dashiell email with Silverman, nor does Silverman's meeting with Pajonas mean that Silverman defrauded Cordell with regard to the April 2007 loan.

## IV.    **CONCLUSION**

THE COURT, being fully advised and having considered the pertinent portions of the record, hereby

ORDERS AND ADJUDGES that Kaplan, Silverman and Abbott's motion for summary judgment, which arguments KPKB has adopted, filed July 17, 2015 **[DE 592]**, is GRANTED. Final judgment shall be entered by separate order.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 9th day of November, 2015.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

12/6/2015                          CM/ECF - Live Database - flsd

| 11/05/2015 | 783 | Endorsed ORDER denying 780 MOTION for Appearance Ad Hoc; denying 780 Motion for Reconsideration. The only materials Plaintiff may submit are the materials designated in DE 778. Signed by Senior Judge Kenneth L. Ryskamp on 11/5/2015. (kdn) (Entered: 11/05/2015) |

| 11/04/2015 | 778 | Endorsed ORDER granting 777 Motion for Clarification. The Court at the November 3, 2015 summary judgment hearing allowed Plaintiff five days to submit record documentation of the following matters: A. That Pajonas (rather than Perkins) threatened to go to the authorities in November or December 2006;B. That Pajonas said Kaplan paid him for silence; C. That there is a four page email showing that Kaplan knew of the April loan terms; D. That Chris Hoctor testified in deposition that he told Silverman that Ed Okun was going to purchase 1031 Advance and then withdraw monies from it. Plaintiff may not submit any papers other than Plaintiff's record documentation of the aforesaid statements. Signed by Senior Judge Kenneth L. Ryskamp on 11/4/2015. (kdn) (Entered: 11/04/2015) |

| 11/03/2015 | 773 | Endorsed ORDER denying 603 Motion for Partial Summary Judgment. The Court denied Plaintiff's motion for partial summary judgment from the bench during the November 3, 2015 summary judgment hearing. Signed by Senior Judge Kenneth L. Ryskamp on 11/3/2015. (kdn) (Entered: 11/03/2015) |

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80416-CIV-RYSKAMP/HOPKINS

CORDELL CONSULTANTS, INC.
MONEY PURCHASE PLAN,
a Virginia corporation,

      Plaintiff,

v.

ELIOT C. ABBOTT, an individual;
DALE S. BERGMAN, an individual;
ABBEY L. KAPLAN, an individual;
STEVEN I. SILVERMAN, an individual;
and KLUGER, PERETZ, KAPLAN
& BERLIN, P.L., a Florida Professional
Limited Liability Company,

      Defendants.

_____/

## ORDER DENYING MOTION FOR LEAVE TO FILE SUPPLEMENTAL EXHIBITS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION IN LIMINE REGARDING "SPECULATION"

THIS CAUSE comes before the Court pursuant to Plaintiff's motion for leave to file supplemental exhibits in opposition to Defendants' motion for summary judgment and defendants' motion in limine regarding "speculation," filed October 27, 2015 **[DE 756]**.  Kaplan and Silverman responded on October 30, 2015 **[DE 760]**.  Plaintiff replied on November 2, 2015 **[DE 767]**.  This motion is ripe for adjudication.

Plaintiff requests leave to file additional exhibits in response to Defendants' motion for summary judgment and Defendants' motion in limine regarding "speculation."  Plaintiff gives not reason for the untimely request to introduce these exhibits save that "[a]t this time, Plaintiff has identified other documents produced by the Defendants which further clarify their knowledge

2

of Okun's increased liability as of April 2-3, 2007," and because of the "complexity of the instant case." (Motion, p. 2; Reply, p. 1.) The documents in question were available to Plaintiff at the time it filed its responses to Defendants' summary judgment motion. This motion is moot insofar as it relates to the motion in limine regarding "speculation," as that motion has been stricken. It is hereby

ORDERED AND ADJUDGED that the motion motion for leave to file supplemental exhibits in opposition to Defendants' motion for summary judgment and defendants' motion in limine regarding "speculation," filed October 27, 2015 **[DE 756]**, is DENIED.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 3d day of November, 2015.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80416-CIV-RYSKAMP/HOPKINS

CORDELL CONSULTANTS, INC.
MONEY PURCHASE PLAN,
a Virginia corporation,

       Plaintiff,

v.

ELIOT C. ABBOTT, an individual;
DALE S. BERGMAN, an individual;
ABBEY L. KAPLAN, an individual;
STEVEN I. SILVERMAN, an individual;
and KLUGER, PERETZ, KAPLAN
& BERLIN, P.L., a Florida Professional
Limited Liability Company,

       Defendants.
_____/

## ORDER DENYING MOTION TO STRIKE APPENDIX TO DEFENDANTS' KAPLAN AND SILVERMAN'S REPLY MEMORANDA IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court pursuant to Plaintiff's motion to strike appendix to Defendants Kaplan and Silverman's reply memoranda in support of their motion for summary judgment, filed August 25, 2015 **[DE 712]**. Kaplan and Silverman responded on September 10, 2015 **[DE 725]**. Plaintiff replied on September 14, 2015 **[DE 726]**.

Plaintiff complains that Kaplan and Silverman attached a 73 page appendix to their summary judgment reply and have used this reply as an "end run" around the Court's page limits. (Motion, p. 1.) While the Court will not go so far as to strike the appendix, the Court informs the parties that it will not consider substantive argument contained within same. It is hereby

ORDERED AND ADJUDGED that Plaintiff's motion to strike appendix to Defendants

2

Kaplan and Silverman's reply memoranda in support of their motion for summary judgment, filed August 25, 2015 **[DE 712]**, is DENIED.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 3d day of November, 2015.

<u>S/Kenneth L. Ryskamp</u>
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80416-CIV-RYSKAMP/HOPKINS

CORDELL CONSULTANTS, INC.
MONEY PURCHASE PLAN,
a Virginia corporation,

      Plaintiff,

v.

ELIOT C. ABBOTT, an individual;
DALE S. BERGMAN, an individual;
ABBEY L. KAPLAN, an individual;
STEVEN I. SILVERMAN, an individual;
and KLUGER, PERETZ, KAPLAN
& BERLIN, P.L., a Florida Professional
Limited Liability Company

      Defendants.
_____/

## ORDER DENYING MOTION FOR LEAVE TO FILE SUPPLEMENTAL SUMMARY JUDGMENT MATERIAL BASED ON EXPERT TESTIMONY

THIS CAUSE comes before the Court pursuant to Plaintiff's motion for leave to file

supplemental summary judgment material based on expert testimony, filed October 6, 2015 **[DE

737]**. Defendant Kaplan responded to the motion on October 7, 2015 **[DE 739]**. Defendants

Silverman and Abbott adopted Kaplan's response. Plaintiff replied on October 7, 2015 **[DE

742]**. Kaplan filed on October 8, 2015 **[DE 743]** an "acknowledgment of error" in relation to its

response. This motion is ripe for adjudication.

On August 4, 2015 **[DE 651]**, the Court allowed Kaplan and Silverman to substitute

Terry Spurlock ("Spurlock") as a substitute witness for Hans Mueller. Kaplan and Silverman

had retained Hans Mueller as a loan expert, but Hans Mueller unexpectedly withdrew as an

expert due to a conflict of interest.  As noted in the August 4, 2015 order, Kaplan and Silverman

had every reason to believe that Mueller had conducted a conflicts check prior to signing on to

this litigation.  Accordingly, the Court allowed Kaplan and Silverman leave to designate

Spurlock as an expert witness and allowed Plaintiff until August 14, 2015 to depose Spurlock.

Plaintiff deposed Spurlock on August 10, 2015.

On September 15, 2015 **[DE 727]**, the Court granted Plaintiff leave to designate Mark

Kesselman ("Kesselman") as a rebuttal witness to Spurlock.  The order provided that any

testimony and opinion from Kesselman shall be for the sole purpose of contradicting or rebutting

Spurlock and shall not be for the purpose of introducing new argument or theories.  The Court

stated that at the conclusion of any deposition of Kesselman, the Court would, if necessary, allow

limited supplementation to the parties' summary judgment filings.  Kesselman was deposed on

October 4, 2015.

Plaintiff now wishes to supplement its summary judgment filings based on testimony

from both Spurlock and Kesselman.  Spurlock was not cited in either of the parties' summary

judgment filings, however.  The Court recognizes that Spurlock was not deposed until August

10, 2015, after the bulk of the parties' summary judgment filings, but Plaintiff's reply in relation

to its motion for summary judgment was not filed until August 13, 2015.  Plaintiff therefore

chose not to avail itself of the opportunity to cite Spurlock in its summary judgment filings.

The only citation to Spurlock's testimony was in Abbott's reply to Kaplan and

Silverman's motion for summary judgment.  Abbott himself did not move for summary judgment

and merely joined Kaplan and Silverman's motion.  Accordingly, the Court granted Plaintiff's

August 20, 2015 **[DE 702]** unopposed motion to strike both Abbott's joinder in the summary

judgment motion and his reply thereto **[DE 745]**. Plaintiff's motion to strike Abbott's joinder and reply stated that Plaintiff would be unable to respond to Abbott's reply absent leave of Court. Plaintiff moved on August 17, 2015 **[DE 688]** for leave to file a supplemental response to clarify its opposition to Abbott's joinder in the summary judgment motion, but this request made no request for leave to respond for the purpose of including testimony from Spurlock. The Court denied this motion as moot **[DE 748]**, as it had previously granted Plaintiff's unopposed motion to strike Abbott's joinder and reply. Plaintiff therefore chose to move to strike Abbott's reply rather than to seek leave to rebut the expert testimony contained therein.

Whereas Plaintiff missed both an opportunity to introduce testimony from Spurlock and an opportunity to introduce rebuttal testimony from Kesselman, Plaintiff may not now "change its mind" and receive leave to introduce testimony from both of these witnesses. It is hereby

ORDERED AND ADJUDGED that Plaintiff's motion for leave to file supplemental summary judgment material based on expert testimony, filed October 6, 2015 **[DE 737]**, is DENIED.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 20th day of October, 2015.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80416-CIV-RYSKAMP/HOPKINS

CORDELL CONSULTANTS, INC.
MONEY PURCHASE PLAN,
a Virginia corporation,

      Plaintiff,

v.

ELIOT C. ABBOTT, an individual;
DALE S. BERGMAN, an individual;
ABBEY L. KAPLAN, an individual;
STEVEN I. SILVERMAN, an individual;
and KLUGER, PERETZ, KAPLAN
& BERLIN, P.L., a Florida Professional
Limited Liability Company

      Defendants.

_____/

## ORDER DENYING MOTION FOR RECONSIDERATION

THIS CAUSE comes before the Court pursuant to Plaintiff's motion for reconsideration of the Court's order denying Plaintiff's motion to file an amended witness list, filed June 29, 2015 **[DE 574]**. The motion is fully briefed and is ripe for consideration.

Plaintiff wishes to add John Griffin, Esq. as a witness. Griffin was one of Plaintiff's lawyers at the time of the loan transaction. Plaintiff claims that it did not add Griffin on time because it did not have the necessary documents from its own lawyers until after Defendants served a subpoena on those lawyers. Plaintiffs took the deposition of John Diefenbach on June 17, 2015, in which Diefenbach acknowledged that Plaintiff had made multiple efforts to obtain the loan file from its lawyers and that the Zobrist firm produced nothing. The reply to the original motion to file an amended witness list also asserts that Plaintiff made multiple attempts

2

to obtain the loan documents.

Plaintiff has no excuse for failing to recognize that its own lawyer might have relevant and discoverable evidence and should have been listed on its Rule 26 disclosures and its witness list. The failure of its prior firm to produce all of its documents when Plaintiff requested is no excuse for failing to list the law firm and its lawyers in these disclosures. This is not late discovery of an unknown witness, it is a failure to consider and discover its own case as required by the Rules of Civil Procedure and this Court's orders. It is hereby

ORDERED AND ADJUDGED that the motion for reconsideration is DENIED.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 29th day of July, 2015.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

| From: | cmecfautosender@flsd.uscourts.gov |
|---|---|
| To: | flsd_cmecf_notice@flsd.uscourts.gov |
| Subject: | Activity in Case 9:11-cv-80416-KLR Cordell Consultant, Inc. Money Purchase Plan and Trust, a Virginia Corporation v. Abbott et al Order on Motion for Reconsideration |
| Date: | Tuesday, July 28, 2015 12:27:05 PM |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court**

**Southern District of Florida**

## Notice of Electronic Filing

The following transaction was entered on 7/28/2015 at 12:24 PM EDT and filed on 7/28/2015

| **Case Name:** | Cordell Consultant, Inc. Money Purchase Plan and Trust, a Virginia Corporation v. Abbott et al |
|---|---|
| **Case Number:** | 9:11-cv-80416-KLR |
| **Filer:** | |
| **Document Number:** | 625(No document attached) |

**Docket Text:**
**Endorsed ORDER denying [620] Motion for Reconsideration. Briefing of the motions at issue will proceed as set forth in DE 619. Signed by Senior Judge Kenneth L. Ryskamp on 7/28/2015. (kdn)**

**9:11-cv-80416-KLR Notice has been electronically mailed to:**

Alexander Rundlet    alexanderrundlet@barzeeflores.com

Anthony J. Carriuolo    acarriuolo@bergersingerman.com, drt@bergersingerman.com, DRT@ecf.inforuptcy.com, mnewland@bergersingerman.com

Brian F. Spector    brian@bspector.com, brian_spector@bellsouth.net

Bryan James Yarnell    byarnell@gilbertyarnell.com, dnieves@gilbertyarnell.com, gneal@gilbertyarnell.com, igilbert@gilbertyarnell.com, szonaid@gilbertyarnell.com, vnovember@gilbertyarnell.com

Daniela A Gordon    DGordon@dubosarnavon.com

David W. Trench     dtrench@bilzin.com, EService@bilzin.com, hrodriguez@bilzin.com

Deborah Sampieri Corbishley     dcorbishley@kennynachwalter.com,
 mmitchell@kennynachwalter.com

Edward Robert Shohat     eshohat@joneswalker.com, calvarez@joneswalker.com,
 jmay@joneswalker.com

Howard D. DuBosar     hdubosar@dubolaw.com, dgordon@dubolaw.com,
 kboulter@dubolaw.com, kdoyle@dubolaw.com, rsheres@dubolaw.com,
 tnovak@dubolaw.com

Irwin R. Gilbert     igilbert@gilbertyarnell.com, byarnell@gilbertyarnell.com,
 dnieves@gilbertyarnell.com, gneal@gilbertyarnell.com, szonaid@gilbertyarnell.com,
 vnovember@gilbertyarnell.com

Jason Stuart Weiss     jason@jswlawyer.com, Peter@jswlawyer.com

Marilyn Golub Kohn     mkohn@klugerkaplan.com, mmathis@klugerkaplan.com

Michael Scott Perse     mperse@klugerkaplan.com, chimmel@klugerkaplan.com,
 dbudde@klugerkaplan.com

Ramon Alvaro Rasco     rrasco@podhurst.com, jrasco@podhurst.com, laja@podhurst.com,
 mvalledor@podhurst.com

Richard H. Critchlow     rcritchlow@knpa.com, rastiazarain@knpa.com

Robert Cory Sheres     RSheres@dubosarnavon.com, kboulter@dubosarnavon.com,
 TNovak@dubosarnavon.com

**9:11-cv-80416-KLR Notice has not been delivered electronically to those listed below and
 will be provided by other means. For further assistance, please contact our Help Desk at
 1-888-318-2260.:**

| From: | cmecfautosender@flsd.uscourts.gov |
|-------|-----------------------------------|
| To: | flsd_cmecf_notice@flsd.uscourts.gov |
| Subject: | Activity in Case 9:11-cv-80416-KLR Cordell Consultant, Inc. Money Purchase Plan and Trust, a Virginia Corporation v. Abbott et al Order on Motion for Extension of Time |
| Date: | Friday, July 24, 2015 5:34:56 PM |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 7/24/2015 at 5:32 PM EDT and filed on 7/24/2015

| **Case Name:** | Cordell Consultant, Inc. Money Purchase Plan and Trust, a Virginia Corporation v. Abbott et al |
|----------------|-----------------------------------------------------------------|
| **Case Number:** | 9:11-cv-80416-KLR |
| **Filer:** | |
| **Document Number:** | 619(No document attached) |

**Docket Text:**
**Endorsed ORDER granting in part and denying in part [611] Motion for Extension of Time. Briefing on the motion for summary judgment shall remain on schedule. Responses thereto are due August 3 and replies are due August 13. Responses to D.E. 597, 598, 599 and 600 are extended to and will be due on August 14 by 5 P.M. Responses to D.E. 596 and 601 are extended to and will be due on August 25, and replies to D.E. 507-600 are extended to and also will be due on August 25. Replies to D.E. 596 and 601 will be due on September 4. Signed by Senior Judge Kenneth L. Ryskamp on 7/24/2015. (kdn)**

**9:11-cv-80416-KLR Notice has been electronically mailed to:**

Alexander Rundlet     alexanderrundlet@barzeeflores.com

Anthony J. Carriuolo     acarriuolo@bergersingerman.com, drt@bergersingerman.com, DRT@ecf.inforuptcy.com, mnewland@bergersingerman.com

Brian F. Spector     brian@bspector.com, brian_spector@bellsouth.net

Bryan James Yarnell    byarnell@gilbertyarnell.com, dnieves@gilbertyarnell.com,
  gneal@gilbertyarnell.com, igilbert@gilbertyarnell.com, szonaid@gilbertyarnell.com,
  vnovember@gilbertyarnell.com

Daniela A Gordon    DGordon@dubosarnavon.com

David W. Trench    dtrench@bilzin.com, EService@bilzin.com, hrodriguez@bilzin.com

Deborah Sampieri Corbishley    dcorbishley@kennynachwalter.com,
  mmitchell@kennynachwalter.com

Edward Robert Shohat    eshohat@joneswalker.com, calvarez@joneswalker.com,
  jmay@joneswalker.com

Howard D. DuBosar    hdubosar@dubolaw.com, dgordon@dubolaw.com,
  kboulter@dubolaw.com, kdoyle@dubolaw.com, rsheres@dubolaw.com,
  tnovak@dubolaw.com

Irwin R. Gilbert    igilbert@gilbertyarnell.com, byarnell@gilbertyarnell.com,
  dnieves@gilbertyarnell.com, gneal@gilbertyarnell.com, szonaid@gilbertyarnell.com,
  vnovember@gilbertyarnell.com

Jason Stuart Weiss    jason@jswlawyer.com, Peter@jswlawyer.com

Marilyn Golub Kohn    mkohn@klugerkaplan.com, mmathis@klugerkaplan.com

Michael Scott Perse    mperse@klugerkaplan.com, chimmel@klugerkaplan.com,
  dbudde@klugerkaplan.com

Ramon Alvaro Rasco    rrasco@podhurst.com, jrasco@podhurst.com, laja@podhurst.com,
  mvalledor@podhurst.com

Richard H. Critchlow    rcritchlow@knpa.com, rastiazarain@knpa.com

Robert Cory Sheres    RSheres@dubosarnavon.com, kboulter@dubosarnavon.com,
  TNovak@dubosarnavon.com

**9:11-cv-80416-KLR Notice has not been delivered electronically to those listed below and
will be provided by other means. For further assistance, please contact our Help Desk at
1-888-318-2260.:**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**


CASE NO. 11-80416-CIV-RYSKAMP/HOPKINS


CORDELL CONSULTANT, INC. MONEY
PURCHASE PLAN AND TRUST, a
Virginia Corporation,

      Plaintiff,


v.


ELIOT C. ABBOTT, et al.,

      Defendants.

_____/


## ORDER GRANTING DEFENDANTS KAPLAN AND SILVERMAN'S MOTION TO STRIKE EXPERT REPORT OF SARA LORD

THIS CAUSE comes before the Court pursuant to Defendants Kaplan and Silverman's motion to strike the expert report of Sara Lord, Esq. ("Lord") filed June 9, 2015 **[DE 521]**. Plaintiff responded on June 23, 2015 **[DE 569]**. Defendants replied on June 29, 2015 **[DE 572]**. This motion is ripe for adjudication.

By Order dated November 14, 2014, Plaintiff's expert disclosures were due on April 14, 2015. Even though the date was agreed and known five months in advance, Plaintiff received a ten day extension to make the disclosures, through April 24, 2015. At that time, Plaintiff filed a Notice of Compliance and attached two disclosures, one of which related to Lord.

Lord was to opine on the legal basis for a prohibition against Defendants representing Ed

Okun and his entities in loan transactions in which Defendants allegedly knew that Okun

intended to use loan proceeds for his Ponzi scheme and whether Florida Bar Rules 4-1.2(d) and

4-1.16(a) bar Defendants' alleged conduct.

Three days before the deadline for Lord's deposition expired, Plaintiff moved for an

extension to submit expert reports. The Court entered the following endorsed order on May 22,

2015:

> Endorsed ORDER on 430 Motion for Extension of Time. **Plaintiff shall produce final, complete and binding expert reports by 5 p.m. on May 27, 2015**. Plaintiff shall produce its expert witnesses for deposition by June 2, 2015. Defendant's expert disclosure deadline shall be two weeks after the depositions of Plaintiff's witnesses. Defendant's experts shall be deposed within two weeks after they have been disclosed. Signed by Senior Judge Kenneth L. Ryskamp on 5/22/2015. (kdn) (Entered: 05/22/2015)

[DE 461] (emphasis added).

The extended May 27 deadline came and went without a modified disclosure. On June

first at noon, a day before Lord's deposition, Plaintiff sent a notice that the documents relating to

Lord's deposition were available on Dropbox. 3,249 pages of documents were made available

via Dropbox.

Lord was deposed on June 2. Plaintiff claims that Lord testified that the April 24, 2015

report contained a complete statement of all of the opinions she will express in this case. The

Court has reviewed the deposition transcript and is concerned that both Lord's expert report and

her opinions are incomplete. When Lord was presented with a copy of her report at deposition,

she admitted that she has not reviewed the facts and the data that formed the basis for the

opinions contained in the report:

Q. All right. Looking at Exhibit Number 1,
Ms. Lord, does that contain a complete statement of
all of the opinions that you will express in this
case?

A. I believe it is does.

Q. Does that contain a complete statement of
the basis and reasons for every opinion you will
express in this case?

A. When you say "basis," are you referring to
the "Statement As to The Facts Or Data Considered"
portion or are you referring to some other sort of
record evidence or data, just so I'm clear?

Q. I'm referring to Rule~26(b)(2)(B), and as
Mr. Gilbert is fond of saying, Romanette (i), that the
report must contain a complete statement of all
opinions the witness will express and the basis and
reasons for them.

A. Okay. Well, I'm just asking whether you
are referring to what is contained in here?

Q. Yes. Does the –

A. Yes.

Q. Does the report contain all the bases and
reasons for your opinions?

A. Yes.

Q. *Does that report identify the facts and
data that you considered in forming your opinions?*

A. *It does identify them. I will say that
some of these I have not reviewed completely to date.*

(Lord Deposition, p. 13-14) (emphasis added).  When asked whether she wrote her report, Lord

responded that she "had substantial input into it." *Id.* at 9. Nor has Lord reached conclusions about either individual Defendant. "I have not made an in-depth assessment as to each of the individual attorneys," she explains. *Id.* at 36. *See id.* at 33 ("Q. And it is your conclusion that Mr. Silverman knew about the acquisition of the other exchange company? A. I am not entirely -- I don't believe I have entirely reviewed evidence with respect to him and his involvement in that transaction."); 72 ("[H]ave you concluded that Steve Silverman provided substantial assistance to that December loan? A. I haven't made a specific, as I've said, judgment as to each of the attorneys."). Rather, her conclusion regarding the knowledge of the individual lawyers is one that she is "comfortable" with on a "preliminary" basis. *Id.* at 38.

Three depositions were listed in the April 24 disclosure as those relied on in arriving at the opinion: Schachter, Dasheill and Pajonas. Lord read none of them. *Id.* at 20-21. She does plan to read them at some point, *id.* at 23, but she could not be cross examined on them at deposition. She did, however, read all or part of Bergman's, Abbott's and Silverman's depositions, but notice of this reliance was not provided, so cross-examination regarding those depositions was not possible. *Id.* at 19-20. Lord admitted that she had yet to read the transcripts from Okun's 2009 criminal trial. *Id.* at 21. Lord further indicated her intent to review many more depositions. *Id.* at 27-28 ("Q. Is it your intention to read any of the transcripts that we have discussed that we have not yet read? A. Yes, it is. Q. All of them or specific ones? A. I would read all of them. I believe in a comprehensive approach.").

Lord also stated that she relied on the Dropbox materials in forming her opinions. *Id.* at 63 (saying that she considered the Dropbox materials in forming an opinion regarding what the individual lawyers should have known about the Ponzi scheme); 182 ("Q. Exhibit 19 is another

document from Dropbox....Did you consider this in arriving at your opinions?  A. Yes.").

Rule 26(a)(2) sets forth the required disclosures in expert reports:

(2) *Disclosure of Expert Testimony.*

(A) *In General.*  In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) *Witnesses Who Must Provide a Written Report.*  Unless otherwise stipulated or ordered by the court, **this disclosure must be accompanied by a written report— prepared and signed by the witness**—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

> (i) **a complete statement of all opinions** the witness will express and the basis and reasons for them;

> (ii) **the facts or data considered** by the witness in forming them;

> (iii) any exhibits that will be used to summarize or support them; . . .

(Emphasis added.)  Plaintiff's counsel did not comply with Rule 26(a)(2) or with DE 461.  It is also clear that the failures were material and not harmless.

Compliance with Rule 26 is not a casual requirement.  *See Romero v. Drummond Company, Inc.*, 552 F.3d 1303, 1323 (11th Cir. 2008) (affirming exclusion of expert witness, and affirming denial of request to supplement reports where reports failed to state the expert's anticipated opinion with sufficient specificity to allow for cross-examination); *Mitchell v. Ford Motor Company,* 318 Fed.Appx 821, 824-25 (11th Cir. 2009) (exclusion proper where untimely disclosure precluded questioning as to what the witness relied on in forming his opinions). *See generally Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004) (*overruled on other grounds by Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 457 (2006)) ("Because the expert witness

discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational.") (citation omitted).

Under Rule 37(c), failure to timely provide expert information is sanctionable:

If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

When it sought an extension of time to present its expert for deposition, Plaintiff insisted that it was justified because the Defendant lawyers' depositions were not completed in time for the expert report. This justification is not compelling. Plaintiff had no reason to delay taking the individual Defendants' depositions; these individuals were parties to this action from this action's inception. Plaintiff did not even attempt to take these depositions in time for the first expert deadline in October 2014. Plaintiff also states that it missed the May 27 expert report deadline because it was occupied with preparations for a deposition on that was to occur on May 31. This explanation is also not substantial justification for Lord's incomplete expert report and deposition testimony. The May 27 expert report deadline was already an extension granted to Plaintiff, and Plaintiff cannot claim after the fact that the press of litigation caused it to miss the deadline.

Plaintiff's failure has caused Defendants great harm because Defendants have been denied a complete statement of the basis for Lord's opinions, a complete statement of Lord's opinions and have been unable to cross-examine Lord about many of her opinions. It is hereby

ORDERED AND ADJUDGED that the motion to strike, filed June 9, 2015 **[DE 521]** is

7

GRANTED. The testimony of Sara Lord shall be excluded from this matter.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 6th day of July, 2015.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80416-CIV-RYSKAMP/HOPKINS

CORDELL CONSULTANT, INC. MONEY
PURCHASE PLAN AND TRUST, a
Virginia Corporation,

      Plaintiff,

v.

ELIOT C. ABBOTT, et al.,

      Defendants.

_____/

## <u>ORDER DENYING PLAINTIFF'S MOTION TO FILE AMENDED WITNESS LIST</u>

THIS CAUSE comes before the Court pursuant to Plaintiff's motion to file an amended

witness list, filed June 1, 2015 **[DE 485]**. Defendants Kaplan and Silverman responded on June

4, 2015 **[DE 494]**. Defendant KPKB responded on June 9, 2015 **[DE 514]**. Plaintiff replied on

June 10, 2015 **[DE 527]**. On June 12, 2015 **[DE 541]** via endorsed order, the Court requested

clarification from Defendants as to which witnesses on the proposed new witness list Defendants

find objectionable. All Defendants responded to the endorsed order on June 15, 2015 **[DE 547,**

**550]**. Plaintiff responded thereto on June 16, 2015 **[DE 552]**. This motion is ripe for

adjudication.

Defendants represent that they object to the addition of John Griffin as a witness. Griffin

is designated as a corporate representative of the Zobrist Law Group who has knowledge of the

receipt and maintenance of documents relating to the loan at issue. Griffin was one of Plaintiff's

lawyers at the time of the loan transaction. Indeed, Griffin's name is on many emails from April

2007 that relate to the loan. Furthermore, on February 23, 2015, about two months before the

2

witness list was due, Robin Rodriguez, Plaintiff's 30(b)(6) witness, testified that he had at least

some of the relevant files.

Plaintiff claims that it did not add Griffin on time because it did not have the

necessary documents from its own lawyers until after Defendants served a subpoena on those

lawyers.  As indicated above, Plaintiff did have at least some of the files.  Plaintiff was aware of

Griffin for years, but never listed him in its Rule 26 disclosures made in August 2011, nor were

there ever supplemental Rule 26 disclosures.  Adding Griffin as a witness at this late date will

prejudice Defendants.  It is hereby

ORDERED AND ADJUDGED that Plaintiff's motion to file an amended witness list,

filed June 1, 2015 **[DE 485]**, is DENIED ast to John Griffin.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 22d day of June,

2015.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-80416-CIV-RYSKAMP/HOPKINS

CORDELL CONSULTANT, INC. MONEY
PURCHASE PLAN AND TRUST, a
Virginia Corporation,

      Plaintiff,

v.

ELIOT C. ABBOTT, et al.,

      Defendants.

_____/

## ORDER DENYING MOTIONS TO FILE THIRD AMENDED COMPLAINT

THIS CAUSE comes before the Court pursuant to Plaintiff's motion for leave to file a third amended complaint, filed May 2, 2015 **[DE 423]**. Plaintiff moved for leave to file a second (revised) third amended complaint on May 28, 2015 **[DE 472]**. These motions are ripe for adjudication.

More than four years after the filing of this lawsuit, the proposed third amended complaint seeks to add an entirely new party--the law firm of Kluger Kaplan Silverman Katzen & Levine, P.L. ("KKSKL")--and two entirely new causes of action against KKSKL, a claim for successor liability on the theory that KKSKL is either a mere continuation of KPKB or that there was a *de facto* merger of KPKB into KKSKL and a claim for fraudulent conveyance by KPKB to KKSKL pursuant to Fla. Stat. §726.105.

Pursuant to the scheduling order entered on August 5, 2011, the deadline for filing such amendment was December 1, 2011.  The scheduling order states "[t]his schedule shall not be modified absent compelling circumstances."  [D.E. 22]; *see also,* Fed.R.Civ.P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent").  There is no "good cause" to amend the schedule, much less "compelling circumstances."

The transcript from the November 6, 2014 discovery hearing demonstrates that Plaintiff had knowledge of the facts that it believes form the basis of its proposed new claims against KKSKL.  At the hearing, Bryan Yarnell, counsel for Plaintiff, stated the following with regard to KKSKL: "So we have Kluger, Peretz, Kaplan and Berlin, all are named members of that law firm.  They didn't bother to change the name.  They continued it operating....I think that it's a pure fiction to say that these two law firms have no connection..."  [DE 285, p. 3, lines 10-12, 24-25].

Discovery closes on June 19, 2015, and trial is set for the November 16, 2015 docket.  Granting leave to amend will result in both extension of the discovery deadline and the delay of trial.  If KKSKL is added as a new party, KKSKL will be entitled to defend the underlying claims.  KKSKL has the due process right to defend the underlying claims and will be entitled to re-depose and cross-examine every witness that has already been deposed, and to further depose witnesses relevant to the new claims.  The prejudice to KPKB and the other current defendants is obvious and substantial.  Furthermore, it is undeniable that KKSKL would suffer immense prejudice if it is joined as a defendant in a case that has been pending for over four years is.  It is hereby

ORDERED AND ADJUDGED that Plaintiff's motion for leave to file a third amended

3

complaint, filed May 2, 2015 **[DE 423]**, and motion for leave to file a second (revised) third

amended complaint, filed May 28, 2015 **[DE 472]**, are DENIED.

     DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 22d day of June,

2015.

                   S/Kenneth L. Ryskamp
                   KENNETH L. RYSKAMP
                   UNITED STATES DISTRICT JUDGE